# EXHIBIT 14

 

# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Anchorage Field Office
4700 BLM Road
Anchorage, Alaska 99507-2591
www.blm.gov/alaska

In Reply Refer To:
2930 (AKA012)
AA-093273

FEB 2 8 2018

**CERTIFIED MAIL 7014 0510 0001 9932 4783**
**RETURN RECEIPT REQUESTED**

Mike Overcast
Triumvirate, LLC
3705 Arctic Blvd. 429
Anchorage, Alaska 99503

Dear Mr. Overcast:

This letter validates your multi-year Special Recreation Permit (SRP) for the year 2016 for commercial helicopter skiing operations on BLM lands in the Neacola and Tordrillo Mountains, March through April, 2016. Triumvirate, LLC is permitted a maximum of 130 landings at the various locations identified on the attached map. Commercial filming in conjunction with this activity is also authorized. Please recall this requires additional fees and reporting requirements. This permit is subject to compliance with the attached permit stipulations, annual permit validation requirements, and your last submitted operations plan. Please ensure that all staff and pilots adhere to permit requirements. Close observation to these stipulations will help assure safe and enjoyable recreation use, while minimizing potential conflicts and impacts to natural resources.

The result of your 2017 annual performance evaluation is rated as satisfactory. Remember that your 2018 use fee and post use report are due by January 1, 2019.

This decision may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations contained in 43 CFR, Part 4 and the enclosed Form 1842-1. If an appeal is taken, the notice of appeal must be filed in this office (at the above address) within 30 days from receipt of this decision. The appellant has the burden of showing that the decision appealed from is in error.

If an individual wishes to file a petition pursuant to regulations contained in 43 CFR 4.21 (58 FR 4939, January 19, 1993) or 43 CFR 2804.1 for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must

accompany your notice of appeal. A petition for a stay is required to show sufficient justification based on the standards listed below. Copies of the notice of appeal and petition for a stay **must** also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (see 43 CFR 4.413) at the same time the original documents are filed with this office. If a stay is requested, the appellant has the burden of proof to demonstrate that a stay should be granted.

## Standards for Obtaining a Stay

Except as otherwise provided by law or other pertinent regulation, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards:

      (1)     The relative harm to the parties if the stay is granted or denied,

      (2)     The likelihood of the appellant's success on the merits,

      (3)     The likelihood of immediate and irreparable harm if the stay is not granted, and

      (4)     Whether the public interest favors granting the stay.

We're happy to support your commercial helicopter skiing activities and thank you for your support in helping to keep public lands in a condition for all to enjoy. If you have any questions or concerns please contact Stephanie Kuhns at (907) 267-1459. Her e-mail address is skuhns@blm.gov.

Sincerely,

Bonnie Million
Field Manager

Enclosure

# CONDITIONS AND STIPULATIONS
## For
## SPECIAL RECREATION PERMIT #AA- AA-093273
### Mike Overcast- Triumvirate, LLC

In addition to the terms included on the back of your Special Recreation Application and Permit (SRP) (Form 2930-1), the following conditions and stipulations is a part of this permit and are applicable to BLM-administered lands and water, including State and Native selected areas. Failure to comply with any of these conditions or stipulations knowingly or willfully is a violation of 43 CFR 2932.57, punishable by up to a $100,000 fine and/or a year in jail.

1. Triumvirate, LLC is permitted a maximum of 130 landings on BLM-managed lands.

2. Aircraft and ground activities will maintain 1,500 feet vertical and horizontal distance from visible goats and sheep, as well as any habitats that are mapped by BLM as high use areas. Aircraft will not land within ½ mile of habitats that are mapped as high use areas. As new data becomes available, any nearby authorized activities will be reviewed accordingly.

3. All operations, including skiing activities, will maintain a 1,500 foot clearance of key sensitive bird nesting sites, brown and black bears, wolves, wolverine, and moose. Steepness (degree in slope) and roughness (outcrops and spur ridges) affect the ratio of elevation to horizontal distance significantly. Attempts should be made to maximize distance between ground and habitats or animals wherever possible. Flight routes over near level terrain will maintain a minimum of 1,500 feet above ground level and at least 1,500 feet horizontal distance from wildlife habitat features described above. Pilots are not expected to compromise safety when weather conditions indicate the 1,500 foot minimum cannot be met.

4. All authorized operations will adhere to U.S. Fish and Wildlife Service (USFWS) recommendations regarding eagle nests.
   a. Maintain established travel routes, but avoid any eagle nest by at least ¼ mile (1,320 feet).
   b. Helicopters must avoid hovering near and circling any eagle nest.

5. Authorized operators shall not hover, circle, or harass wildlife in any way. This refers particularly to mountain goats and sheep, but includes all wildlife species.

6. All authorized operators will assure that their operations meet Federal Aviation Administration (FAA) requirements to achieve safe air operations (routing, airspace separation and coordination with other operators).

7. All authorized operators will be required to submit and abide by a Safety and Operating Plan which will be approved by the BLM and will be a part of the SRP. The FAA may review these submissions.

8. Explosives for avalanche mitigation are prohibited.

9. All helicopters shall be equipped with satellite/GPS transponders with web-based flight tracking capability. The flight following system shall have the ability to view both live and historic flight data for the duration of the permitted use. The permittee shall give BLM full access to the flight tracking system and historic data, including log-in information if necessary, during the period of authorized use.

10. Triumvirate, LLC must communicate regularly throughout the season with the other two BLM-permitted operators in the area regarding their flight plans. This will help to improve client experience, maintain safety, and reduce the likelihood of mid-air collisions.
    a. Other operators permitted by the BLM are: Silverton Mountain Guides and Alaska Snowboard Guides.

11. To prevent the concentration of human waste by regular use of ski runs and to promote responsible disposal of human waste within a unique natural area, the use of a portable restroom shall be required for the duration of each excursion. We suggest using lightweight, compact, chemical-free units with disposable landfill-approved biodegradable bags, e.g., "Wag Bags."

12. Individuals are prohibited from picking up or disturbing any historic or cultural artifacts and will report locations of artifacts to the BLM.

13. The BLM may suspend or modify an SRP, including adaptive management strategies, if necessary to protect public resources, health, safety, or the environment or as a result of non-compliance with the permit stipulations.

**Commercial Filming**

14. Commercial filming on BLM-managed lands is authorized in conjunction with your SRP. Both the SRP fee and commercial filming fees are due with the post use report. Filming is limited to the use of handheld, tripod mounted, and helicopter mounted cameras. It is further understood that the location of the activity being filmed, not the location of the camera or photographer, is the determining factor when determining filming fees. Payment for both the SRP fee and the commercial filming fee will be charged and submitted separately (e.g. different checks). The minimum commercial filming fees for 2018 are as follows:

Commercial Still Photography:

| Persons on Site | 2018 Minimum Fee/Day |
|-----------------|----------------------|
| 1 - 10          | $143.99              |
| 11-30           | $210.43              |
| >30             | $343.34              |

Motion Picture & TV Location:

| Persons on Site | 2018 Minimum Fee/Day |
|-----------------|----------------------|
| 1 - 10          | $210.43              |
| 11 - 30         | $276.89              |
| 31 - 60         | $697.76              |
| >60             | $764.23              |

## ATTACHMENT 1

**Pollution Prevention and Reporting Stipulations for management of Wastewater, Solid Waste, and Spill Prevention and Response**

Wastewater must be managed in accordance with Title 18 Alaska Administrative Code, Chapter 72, (18 AAC 72) Wastewater Disposal. Wastewater is defined as Human Waste (sewage), and Gray Water (water which has been used for personal hygiene, washing clothing, tools, equipment, or sanitizing cooking and eating materials). If the standards for Pit Privies (Outhouse) found at 18 AAC 72.030 (extract at Attachment 2) cannot be met, all wastewater must be collected (in a portable toilet for example) and transported to a state approved disposal facility. Upon closure of a site the Pit Privy(s) must be limed and completely back-filled with the surface area covered and re-graded to approximate original appearance. Pit Privies must be authorized by the BLM in advance and identified within their submitted Operating Plan.

Non-Hazardous Solid Waste (trash/refuse) may be burned in pits. All unburned/unburnable trash/refuse will be back hauled from the area and disposed in an approved waste disposal site. All fire pits must be removed or destroyed after use. Trash/refuse will not be disposed of in a Pit Privy. Food waste and human waste should be disposed of daily to reduce conflicts with wildlife which may be attracted.

Hazardous Waste will be back hauled from the area and properly disposed by the generator at the end of each year a permit is in effect. Hazardous wastes are defined by the Resource Conservation and Recovery Act (RCRA) and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Hazardous wastes include, but are not limited to: fuel, oils and grease, compressed gas cylinders (propane, butane, aerosol cans, etc.), batteries, insect repellants/pesticides, ammunition, and residues of spills of any of the above.

Fuel, oil, or hazardous substance storage containers will be stored a minimum of 150 feet away from the ordinary high water mark of any water body. Containers with a total combined capacity of 110 gallons must be stored within an impermeable diked area or portable impermeable structure capable of containing 110 percent capacity of the largest independent container. Accumulated rain/snow melt water must be properly removed periodically to ensure the containment structure's capacity remains adequate at all times. All containers must be clearly marked with the contents and owner's name.

Spills/releases to the environment of fuel, oil, or hazardous substances will be responded to and cleaned-up immediately. Adequate spill response/cleanup materials such as absorbent pads, shovels, and heavy gauge plastic bags or containers will be available and on-hand at each location where fuels/oil are stored or used. Persons who are expected to respond to spills of oil or hazardous substances must be properly trained in accordance with the standards prescribed in Code of Federal Regulations 29, Part 1910.120(q). No dumping of fuel in pits on public land is authorized or tolerated. Spills of fuel/oil or any hazardous substance will be reported to the BLM, and the Alaska Department of Environmental Conservation as required by Title 18 Alaska Administrative Code, Chapter 75; Oil & Hazardous Substances Pollution Control. Specific

direction on reportable quantities and time allowances is found at 18 AAC 75.300, Discharge Release Notification; Release Reporting (extract at Attachment 2).

# TITLE 18 ALASKA ADMINISTRATIVE CODE
## CHAPTER 72 – WASTEWATER DISPOSAL (EXTRACT)

18 AAC 72.030. PIT PRIVIES. Pit privies must meet the separation distance requirements in 18 AAC 72.020. A person may not dispose of gray water in a pit privy. (Eff.4/1/99, Register 149)

18 AAC 72.020. SEPARATION DISTANCES

(b) The minimum separation distance between the mean annual high water level of a lake, river, stream, spring, or slough, or the mean higher high water level of coastal waters, and a lift station, holding tank, septic tank, soil absorption system, seepage pit, pit privy, or other wastewater collection, treatment, or disposal system is 100 feet, measured horizontally.

(i) A person may not install a pit privy in an area subject to flooding. The vertical separation between the lowest point of a pit privy and the water table, measured during the season of the year with maximum water table elevation, must be at least four feet.

# TITLE 18 ALASKA ADMINISTRATIVE CODE
## CHAPTER 75 – OIL & HAZARDOUS SUBSTANCES POLLUTION CONTROL (EXTRACT)

18 AAC 75.300. DISCHARGE OR RELEASE NOTIFICATION; REPORTING REQUIREMENTS.

(a) Subject to (b) of this section, a person in charge of a facility or operation shall notify the department by telephone, and immediately afterwards send the department a written notice by facsimile, hand delivery, or first class mail, informing the department about a discharge or release of a hazardous substance at or from the facility or operation as follows:

(1) as soon as the person has knowledge of a

(A) discharge or release of a hazardous substance other than oil;

(B) discharge or release of oil to water; or

(C) discharge or release, including a cumulative discharge or release, of oil in excess of 55 gallons solely to land outside an impermeable secondary containment area or structure; and

(2) within 48 hours after the person has knowledge of a discharge or release, including a cumulative discharge, of oil solely to land

(A) in excess of 10 gallons, but 55 gallons or less; or

(B) in excess of 55 gallons, if the discharge or release is the result of the escape or release of oil from its original storage tank, pipeline, or other immediate container into an impermeable secondary containment area or structure.

(b) A person in charge of a facility or operation shall maintain, and provide to the department monthly, a written record of each discharge or release, including a cumulative discharge or release, of one gallon to 10 gallons of oil solely to land.

(c) If a person in charge of a facility or operation has entered into an agreement with the department, as provided under AS 46.03.755(b) or AS 46.09.010(b), for the periodic reporting of a discharge or release of a hazardous substance, the terms of the agreement replace the applicable requirements of this section for the hazardous substance.

(d) After receiving notice of a discharge or release under (a) of this section, and until containment and cleanup are completed, the department will require interim reports as the department considers necessary to ascertain any threat to human health, safety, or welfare, or to the environment.

(e) Unless the department determines that a written report is not needed for the department to ascertain any threat to human health, safety, or welfare, or to the environment, a written report must be submitted to the department within 15 days after containment and cleanup are completed or, if no cleanup occurs, within 15 days after the discharge or release. The report must be submitted to the department's Anchorage, Fairbanks, or Juneau office, whichever is nearest to the location of the discharge, unless the department specifies otherwise. The report must contain the information specified in (f) of this section.

(f) A report, record, or notification required by this section must contain, as applicable,

(1) the date and time of the discharge or release;

(2) the location of the discharge or release;

(3) the name of the facility or operation;

(4) the name, mailing address, and telephone number of

(A) each responsible person; and

(B) the owner and the operator of the facility or operation;

(5) the type and amount of each hazardous substance discharged or released;

(6) factors that caused or contributed to the discharge or release;

(7) a description of any environmental effects of the discharge or release, or the containment and cleanup, to the extent those effects can be identified;

(8) a description of the containment or cleanup action taken;

(9) the estimated amount of

(A) hazardous substance cleaned up; and

(B) hazardous waste generated;

(10) the date and method of disposal or treatment of the hazardous substance, contaminated equipment, contaminated materials, contaminated soil, and contaminated water;

(11) a description of actions being taken to prevent another discharge or release; and

(12) other information that the department requires to fully assess the cause and impact of the discharge or release, including any sampling reports and a description and estimate of any remaining contamination.

**Note: Spills required to be reported to the State of Alaska must also be reported to BLM.**

## POST USE REPORT – AIRCRAFT – 2018
### Bureau of Land Management
### Anchorage Field Office, 4700 BLM Road, Anchorage, AK 99507

Company Name: Triumvirate, LLC

Permit Number: AA-093273

Operator: Mike Overcast

Permit Area: Neacola Mountains

| Date(s) on BLM Land | # of Clients | # of Staff | User Days* | # of Landings | Total Receipts |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**TOTALS**

ALLOWABLE DISCOUNT** (circle one)    0%    40%    80%

USER FEE 3% (adjusted total X .03)    3%

\* User Day is any part of a day spent on BLM Land. Combine both Client and Staff Days.
\*\* See back of this page. Talk to your permit administrator.
ALLOWABLE DISCOUNT

| Percent of total time on BLM Lands or related waters | Fee Reduction | Multiplication Factor |
|---|---|---|
| Less than 6% | 80% | .2 |
| Between 6-60% | 40% | .6 |
| Greater than 60% | 0% | -- |

1.  Describe any management problems associated with your permit or use of public lands which you feel needs our attention:

    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

2.  Landing locations and number for each site (e.g. Latitude 62° 07' 46.1" N., Longitude 154° 53' 01.4" W [datum WGS 84]):

    Location Name & Latitude/Longitude                                    # of Landings

    _____                          _____
    _____                          _____
    _____                          _____
    _____                          _____
    _____                          _____
    _____                          _____

3.  Other Comments:

    _____
    _____
    _____
    _____

Form 1842-1
(September 2006)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

## INFORMATION ON TAKING APPEALS TO THE INTERIOR BOARD OF LAND APPEALS

DO NOT APPEAL UNLESS

1. This decision is adverse to you,

AND

2. You believe it is incorrect

IF YOU APPEAL, THE FOLLOWING PROCEDURES MUST BE FOLLOWED

..............    A person who wishes to appeal to the Interior Board of Land Appeals must file in the office of the officer who made the decision (not the Interior Board of Land Appeals) a notice that he wishes to appeal. A person served with the decision being appealed must transmit the Notice of Appeal in time for it to be filed in the office where it is required to be filed within 30 days after the date of service. If a decision is published in the FEDERAL REGISTER, a person not served with the decision must transmit a *Notice of Appeal* in time for it to be filed within 30 days after the date of publication (43 CFR 4.411 and 4.413).

NOTICE OF APPEAL .......    U.S. Department of Interior, Bureau of Land Management, Carson City Field Office, 5665 Morgan Mill Road Carson City, NV 89701

WITH COPY TO
SOLICITOR...    U.S. Department of the Interior, Office of the Solicitor, Pacific Southwest Region, 2800 Cottage Way, Room E-2753, Sacramento, CA 95825-1890

WITH COPY TO
SOLICITOR...........    Within 30 days after filing the *Notice of Appeal*, file a complete statement of the reasons why you are appealing. This must be filed with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203. If you fully stated your reasons for appealing when filing the *Notice of Appeal*, no additional statement is necessary (43 CFR 4.412 and 4.413).

U.S. Department of the Interior, Office of the Solicitor, Pacific Southwest Region, 2800 Cottage Way, Room E-2753, Sacramento, CA 95825-1890

_____    Within 15 days after each document is filed, each adverse party named in the decision and the Regional Solicitor or Field Solicitor having jurisdiction over the State in which the appeal arose must be served with a copy of: (a) the *Notice of Appeal*, (b) the Statement of Reasons, and (c) any other documents filed (43 CFR 4.413).

_____    Within 15 days after any document is served on an adverse party, file proof of that service with the United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals, 801 N. Quincy Street, MS 300-QC, Arlington, Virginia 22203. This may consist of a certified or registered mail "Return Receipt Card" signed by the adverse party (43 CFR 4.401(c)).

......    Except where program-specific regulations place this decision in full force and effect or provide for an automatic stay, the decision becomes effective upon the expiration of the time allowed for filing an appeal unless a petition for a stay is timely filed together with a *Notice of Appeal* (43 CFR 4.21). If you wish to file a petition for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Interior Board of Land Appeals, the petition for a stay must accompany your *Notice of Appeal* (43 CFR 4.21 or 43 CFR 2801.10 or 43 CFR 2881.10). A petition for a stay is required to show sufficient justification based on the standards listed below. Copies of the *Notice of Appeal* and Petition for a Stay   also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (43 CFR 4.413) at the same time the original documents are filed with this office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.

**Standards for Obtaining a Stay.** Except as otherwise provided by law or other pertinent regulations, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards: (1) the relative harm to the parties if the stay is granted or denied, (2) the likelihood of the appellant's success on the merits, (3) the likelihood of immediate and irreparable harm if the stay is not granted, and (4) whether the public interest favors granting the stay.

Unless these procedures are followed, your appeal will be subject to dismissal (43 CFR 4.402). Be certain that   communications are identified by serial number of the case being appealed.

A document is not filed until it is actually received in the proper office (43 CFR 4.401(a)). See 43 CFR Part 4, Subpart B for general rules relating to procedures and practice involving appeals.

(Continued on page 2)