

# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Anchorage Field Office
4700 BLM Road
Anchorage, Alaska 99507
http://www.blm.gov/ak

In Reply Refer To:
2930 (AKA012)
AA-093273

Mike Overcast
Triumvirate LLC
3705 Arctic Blvd. 429
Anchorage, Alaska 99503

Dear Mr. Overcast:

This letter confirms your 2014 special recreation permit for commercial helicopter skiing operations on BLM lands in the Neacola and Tordrillo Mountains, February through April, 2014. Triumvirate is permitted a maximum of 130 landings at the various locations identified on the attached map. Commercial filming in conjunction with this activity is also authorized. This permit is being issued for an initial one-year term, renewable upon written request annually from the permittee and following successful compliance of the attached general terms and special stipulations, as well as annual validation requirements. Please ensure that all staff and pilots adhere to permit requirements. Close observation to these stipulations will help assure safe and enjoyable recreation use, while minimizing potential conflicts and impacts to natural resources.

Your total use fees for 2014 will be based on information supplied by you through the attached post use report. All income generating activities associated with your use of public land must be reported. Your post use report and use fees for 2014 are due June 1, 2014. Data will remain confidential.

This decision may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations contained in 43 CFR, Part 4 and the enclosed Form 1842-1. If an appeal is taken, your notice of appeal must be filed in this office (at the above address) within 30 days from receipt of this decision. The appellant has the burden of showing that the decision appealed from is in error.

If you wish to file a petition pursuant to regulations contained in 43 CFR 4.21 (58 FR 4939, January 19, 1993) or 43 CFR 2804.1 for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must accompany your notice of appeal. A petition for a stay is required to show sufficient justification based on the standards listed below. Copies of the notice of appeal and petition for a stay **must** also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the appropriate Office of the Solicitor (see 43 CFR 4.413) at the same time the original documents are filed with this office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.

Standards for Obtaining a Stay

Except as otherwise provided by law or other pertinent regulation, a petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards:

(1)     The relative harm to the parties if the stay is granted or denied,

(2)     The likelihood of the appellant's success on the merits,

(3)     The likelihood of immediate and irreparable harm if the stay is not granted, and

(4)     Whether the public interest favors granting the stay.

If you have any questions or concerns please contact Jeff Kowalczyk at (907) 267-1459 or toll free in State at (800) 478-1263. His e-mail address is jkowalcz@blm.gov.

Sincerely,

Alan Bittner
Field Manager

Enclosure

2

## CONDITIONS AND STIPULATIONS
### For
## SPECIAL RECREATION PERMIT #AA- AA-093273
### Mike Overcast- Triumvirate LLC

In addition to the terms included on the back of your Special Recreation Application and Permit (SRP) (Form 2930-1), the following conditions and stipulations is a part of this permit and are applicable to BLM-administered lands and water, including State and Native selected areas. Failure to comply with any of these conditions or stipulations knowingly or willfully is a violation of 43 CFR 2932.57, punishable by up to a $100,000 fine and/or a year in jail.

1.  Aircraft and ground activities will maintain 1,500 feet vertical and horizontal distance from visible goats and sheep, as well as any habitats that are mapped by BLM as high use areas. Aircraft will not land within ½ mile of habitats that are mapped as high use areas. As new data becomes available, any nearby authorized activities will be reviewed accordingly.

2.  All operations, including skiing activities, will maintain a 1,500 foot clearance of key sensitive bird nesting sites, brown and black bears, wolves, wolverine, and moose. Steepness (degree in slope) and roughness (outcrops and spur ridges) affect the ratio of elevation to horizontal distance significantly. Attempts should be made to maximize distance between ground and habitats or animals wherever possible. Flight routes over near level terrain will maintain a minimum of 1,500 feet above ground level and at least 1,500 feet horizontal distance from wildlife habitat features described above. Pilots are not expected to compromise safety when weather conditions indicate the 1,500 foot minimum cannot be met.

3.  All authorized operations will adhere to U.S. Fish and Wildlife Service (USFWS) recommendations regarding eagle nests.
    a.  Maintain established travel routes, but avoid any eagle nest by at least ¼ mile (1,320 feet).
    b.  Helicopters must avoid hovering near and circling any eagle nest.

4.  Authorized operators shall not hover, circle, or harass wildlife in any way. This refers particularly to mountain goats and sheep, but includes all wildlife species.

5.  All authorized operators will assure that their operations meet Federal Aviation Administration (FAA) requirements to achieve safe air operations (routing, airspace separation and coordination with other operators).

6.  All authorized operators will be required to submit and abide by a Safety and Operating Plan which will be approved by the BLM and will be a part of the SRP. The FAA may review these submissions.

7.  Explosives for avalanche mitigation are prohibited.

3

8.  All helicopters shall be equipped with satellite/GPS transponders with web based flight tracking capability. The flight following system shall have the ability to view both live and historic flight data for the duration of the permitted use. The permittee shall give BLM full access to the flight tracking system and historic data, including log-in information if necessary, during the period of authorized use.

9.  The Authorized Officer (AO) may suspend or modify an SRP, including adaptive management strategies, if necessary to protect public resources, health, safety, or the environment or as a result of non-compliance with permit stipulations.

**Commercial Filming**

10. Commercial filming on BLM-managed lands is authorized in conjunction with your SRP. Both the SRP fee and commercial filming fees are due with the post use report. Filming is limited to the use of handheld, tripod mounted, and helicopter mounted cameras. It is further understood that the location of the activity being filmed, not the location of the camera or photographer, is the determining factor when determining filming fees. Payment for both the SRP fee and the commercial filming fee will be charged and submitted separately (e.g. different checks).
    The minimum commercial filming fees for 2014 are as follows:

Commercial Still Photography:

| Persons on Site | 2014 Minimum Fee/Day |
|---|---|
| 1 - 10 | $136.06 |
| 11-30 | $198.86 |
| >30 | $324.45 |

Motion Picture & TV Location:

| Persons on Site | 2014 Minimum Fee/Day |
|---|---|
| 1 - 10 | $198.86 |
| 11 - 30 | $261.65 |
| 31 - 60 | $659.37 |
| >60 | $722.18 |

4

## GENERAL TERMS
### For
### TRIUMVIRATE LLC
### SPECIAL RECREATION PERMIT #AA-093273

In addition to the terms included on the back of your Special Recreation Application and Permit (SRP) (Form 2930-1), the following requirements are a part of this permit and are applicable to BLM-managed lands, including State and Native Selected lands. Failure to comply with any of these stipulations knowingly or willfully is a violation of 43 CFR 2932.57, punishable by up to a $100,000 fine and/or a year in jail.

1. The permittee shall comply with all Federal, state, and local laws; ordinances; regulations; orders; postings; or written requirements applicable to the area or operations covered by the Special Recreation Permit (SRP or permit). The permittee shall ensure that all persons operating under the authorization have obtained all required Federal, state, and local licenses or registrations. The permittee shall make every reasonable effort to ensure compliance with these requirements by all agents of the permittee and by all clients, customers, participants, and spectators.

2. An SRP authorizes special uses of the public lands and related waters and, should circumstances warrant, the permit may be modified by the BLM at any time, including modification of the amount of use. The authorized officer may suspend or terminate an SRP if necessary to protect public resources, health, safety, the environment, or because of non-compliance with permit stipulations. Actions by the BLM to suspend or terminate an SRP are appealable.

3. No value shall be assigned to or claimed for the permit, or for the occupancy or use of Federal lands or related waters granted thereupon. The permit privileges are not to be considered property on which the permittee shall be entitled to earn or receive any return, income, price, or compensation. The use of a permit as collateral is not recognized by the BLM.

4. Unless expressly stated, the permit does not create an exclusive right of use of an area by the permittee. The permittee shall not interfere with other valid uses of the Federal land by other users. The United States reserves the right to use any part of the area for any purpose.

5. The permittee or permittee's representative may not assign, contract, or sublease any portion of the permit authorization or interest therein, directly or indirectly, voluntarily or involuntarily. However, contracting of equipment or services may be approved by the authorized officer in advance, if necessary to supplement a permittee's operations. Such contracting should not constitute more than half the required equipment or services for any one trip or activity and the permittee must retain operational control of the permitted activity. If equipment or services are contracted, the permittee shall continue to be responsible for compliance with all stipulations and conditions of the permit.

5

6.  All advertising and representations made to the public and the authorized officer must be accurate. Although the addresses and telephone numbers of the BLM may be included in advertising materials, official agency symbols may not be used. The permittee shall not use advertising that attempts to portray or represent the activities as being conducted by the BLM. The permittee may not portray or represent the permit fee as a special federal user's tax. The permittee must furnish authorized officer.

7.  The permittee assumes responsibility for inspecting the permitted area for any existing or new hazardous conditions, e.g., trail and route conditions, landslides, avalanches, rocks, changing water or weather conditions, falling limbs or trees, submerged objects, hazardous flora/fauna, abandoned mines, or other hazards that present risks for which the permittee assumes responsibility.

8.  In the event of default on any mortgage or other indebtedness, such as bankruptcy, creditors shall not succeed to the operating rights or privileges of the permittee's SRP.

9.  The permittee cannot, unless specifically authorized, erect, construct, or place any building, structure, or other fixture on public lands. Upon leaving, the lands must be restored as nearly as possible to pre-existing conditions.

10. The permittee must present or display a copy of the SRP to an authorized officer's representative, or law enforcement personnel upon request. If required, the permittee must display a copy of the permit or other identification tag on equipment used during the period of authorized use.

11. The authorized officer, or other duly authorized representative of the BLM, may examine any of the records or other documents related to the permit, the permittee or the permittee's operator, employee, or agent for up to 3 years after expiration of the permit.

12. The permittee must submit a post-use report to the authorized officer by January 1 of every year the permit is authorized. If the post-use report is not received by the established deadline, the permit will be suspended and/or late fees assessed.

13. The permittee shall notify the authorized officer of any incident that occurs while involved in activities authorized by this permit, which result in death, personal injury requiring hospitalization or emergency evacuation, or in property damage greater than $2,500 (lesser amounts if established by state law). Reports should be submitted within 24 hours.

**Pollution Prevention and Reporting Stipulations for management of Wastewater, Solid Waste, and Spill Prevention and Response**

Wastewater must be managed in accordance with Title 18 Alaska Administrative Code, Chapter 72, (18 AAC 72) Wastewater Disposal. Wastewater is defined as Human Waste (sewage), and Gray Water (water which has been used for personal hygiene, washing clothing, tools, equipment, or sanitizing cooking and eating materials). If the standards for Pit Privies (Outhouse) found at 18 AAC 72.030 (extract at Attachment 2) cannot be met, all wastewater must be collected (in a portable toilet for example) and transported to a state approved disposal facility. Upon closure of a site the Pit Privy(s) must be limed and completely back-filled with the surface area covered and re-graded to approximate original appearance. Pit Privies must be authorized by the BLM in advance and identified within their submitted Operating Plan.

Non-Hazardous Solid Waste (trash/refuse) may be burned in pits. All unburned/unburnable trash/refuse will be back hauled from the area and disposed in an approved waste disposal site. All fire pits must be removed or destroyed after use. Trash/refuse will not be disposed of in a Pit Privy. Food waste and human waste should be disposed of daily to reduce conflicts with wildlife which may be attracted.

Hazardous Waste will be back hauled from the area and properly disposed by the generator at the end of each year a permit is in effect. Hazardous wastes are defined by the Resource Conservation and Recovery Act (RCRA) and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Hazardous wastes include, but are not limited to; fuel, oils and grease, compressed gas cylinders (propane, butane, aerosol cans, etc.), batteries, insect repellants/pesticides, ammunition, and residues of spills of any of the above.

Fuel, oil, or hazardous substance storage containers will be stored a minimum of 150 feet away from the ordinary high water mark of any water body. Containers with a total combined capacity of 110 gallons must be stored within an impermeable diked area or portable impermeable structure capable of containing 110 percent capacity of the largest independent container. Accumulated rain/snow melt water must be properly removed periodically to ensure the containment structure's capacity remains adequate at all times. All containers must be clearly marked with the contents and owner's name.

Spills/releases to the environment of fuel, oil, or hazardous substances will be responded to and cleaned-up immediately. Adequate spill response/cleanup materials such as absorbent pads, shovels, and heavy gauge plastic bags or containers will be available and on-hand at each location where fuels/oil are stored or used. Persons who are expected to respond to spills of oil or hazardous substances must be properly trained in accordance with the standards prescribed in Code of Federal Regulations 29, Part 1910.120(q). No dumping of fuel in pits on public land is authorized or tolerated. Spills of fuel/oil or any hazardous substance will be reported to the BLM, and the Alaska Department of Environmental Conservation as required by Title 18 Alaska Administrative Code,

Chapter 75; Oil & Hazardous Substances Pollution Control. Specific direction on reportable quantities and time allowances is found at 18 AAC 75.300, Discharge Release Notification; Release Reporting (extract at Attachment 2).

8

**TITLE 18 ALASKA ADMINISTRATIVE CODE**
**CHAPTER 72 – WASTEWATER DISPOSAL (EXTRACT)**

18 AAC 72.030. PIT PRIVIES. Pit privies must meet the separation distance requirements in 18 AAC 72.020. A person may not dispose of gray water in a pit privy. (Eff.4/1/99, Register 149)

18 AAC 72.020. SEPARATION DISTANCES

(b) The minimum separation distance between the mean annual high water level of a lake, river, stream, spring, or slough, or the mean higher high water level of coastal waters, and a lift station, holding tank, septic tank, soil absorption system, seepage pit, pit privy, or other wastewater collection, treatment, or disposal system is 100 feet, measured horizontally.

(i) A person may not install a pit privy in an area subject to flooding. The vertical separation between the lowest point of a pit privy and the water table, measured during the season of the year with maximum water table elevation, must be at least four feet.

**TITLE 18 ALASKA ADMINISTRATIVE CODE**
**CHAPTER 75 – OIL & HAZARDOUS SUBSTANCES POLLUTION CONTROL**
**(EXTRACT)**

18 AAC 75.300. DISCHARGE OR RELEASE NOTIFICATION; REPORTING REQUIREMENTS.

(a) Subject to (b) of this section, a person in charge of a facility or operation shall notify the department by telephone, and immediately afterwards send the department a written notice by facsimile, hand delivery, or first class mail, informing the department about a discharge or release of a hazardous substance at or from the facility or operation as follows:

(1) as soon as the person has knowledge of a

(A) discharge or release of a hazardous substance other than oil;

(B) discharge or release of oil to water; or

(C) discharge or release, including a cumulative discharge or release, of oil in excess of 55 gallons solely to land outside an impermeable secondary containment area or structure; and

(2) within 48 hours after the person has knowledge of a discharge or release, including a cumulative discharge, of oil solely to land

9

(A) in excess of 10 gallons, but 55 gallons or less; or

(B) in excess of 55 gallons, if the discharge or release is the result of the escape or release of oil from its original storage tank, pipeline, or other immediate container into an impermeable secondary containment area or structure.

(b) A person in charge of a facility or operation shall maintain, and provide to the department monthly, a written record of each discharge or release, including a cumulative discharge or release, of one gallon to 10 gallons of oil solely to land.

(c) If a person in charge of a facility or operation has entered into an agreement with the department, as provided under AS 46.03.755(b) or AS 46.09.010(b), for the periodic reporting of a discharge or release of a hazardous substance, the terms of the agreement replace the applicable requirements of this section for the hazardous substance.

(d) After receiving notice of a discharge or release under (a) of this section, and until containment and cleanup are completed, the department will require interim reports as the department considers necessary to ascertain any threat to human health, safety, or welfare, or to the environment.

(e) Unless the department determines that a written report is not needed for the department to ascertain any threat to human health, safety, or welfare, or to the environment, a written report must be submitted to the department within 15 days after containment and cleanup are completed or, if no cleanup occurs, within 15 days after the discharge or release. The report must be submitted to the department's Anchorage, Fairbanks, or Juneau office, whichever is nearest to the location of the discharge, unless the department specifies otherwise. The report must contain the information specified in (f) of this section.

(f) A report, record, or notification required by this section must contain, as applicable,

(1) the date and time of the discharge or release;

(2) the location of the discharge or release;

(3) the name of the facility or operation;

(4) the name, mailing address, and telephone number of

(A) each responsible person; and

(B) the owner and the operator of the facility or operation;

(5) the type and amount of each hazardous substance discharged or released;

(6) factors that caused or contributed to the discharge or release;

10

(7)  a description of any environmental effects of the discharge or release, or the containment and cleanup, to the extent those effects can be identified;

(8)  a description of the containment or cleanup action taken;

(9)  the estimated amount of

(A)  hazardous substance cleaned up; and

(B)  hazardous waste generated;

(10)  the date and method of disposal or treatment of the hazardous substance, contaminated equipment, contaminated materials, contaminated soil, and contaminated water;

(11)  a description of actions being taken to prevent another discharge or release; and

(12)  other information that the department requires to fully assess the cause and impact of the discharge or release, including any sampling reports and a description and estimate of any remaining contamination.

**Note: Spills required to be reported to the State of Alaska must also be reported to BLM.**

POST USE REPORT – AIRCRAFT - 2014
Bureau of Land Management
Anchorage Field Office, 4700 BLM Road, Anchorage, AK 99507

11

# POST USE REPORT - AIRCRAFT
## Bureau of Land Management
### Anchorage Field Office, 4700 BLM Road, Anchorage, AK 99507

Company Name_____  Operator_____

Permit Number _____  Permit Area _____

| Date(s) on BLM Land | # of Clients | # of Staff | User Days* | # of Landings | Total Receipts |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **TOTALS** | | | | | |
| **ALLOWABLE DISCOUNT** (circle one) | | | 0% | 40% | 80% | |
| **USER FEE 3%** (adjusted total X .03) | | | | 3% | |

\* User Day is any part of a day spent on BLM Land. Combine both Client and Staff Days.
\*\* See back of this page. Talk to your permit administrator.

## ALLOWABLE DISCOUNT

| Percent of total time on BLM Lands or related waters | Fee Reduction | Multiplication Factor |
|---|---|---|
| Less than 6% | 80% | .2 |
| Between 6-60% | 40% | .6 |
| Greater than 60% | 0% | -- |

1. Describe any management problems associated with your permit or use of public lands which you feel needs our attention:

_____
_____
_____
_____
_____
_____
_____
_____

2. Landing locations and number for each site (e.g. Latitude 62° 07' 46.1" N., Longitude 154° 53' 01.4" W [datum WGS 84]):

Location Name & Latitude/Longitude                    # of Landings

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

3. Other Comments:

_____
_____
_____
_____

