United States Department of the Interior 

BUREAU OF LAND MANAGEMENT
Anchorage Field Office
4700 BLM Road
Anchorage, Alaska 99507-2591
http://www.blm.gov/ak

## DETERMINATION OF NEPA ADEQUACY (DNA) WORKSHEET

**Proposed Action Title/Type:** Determination of NEPA Adequacy

**NEPA Register Number:** DOI-BLM-AK-A010-2018-0003-DNA

**Case File Number:** AA-095233

**Location / Legal Description:**
Seward Meridian,

| | | |
|---|---|---|
| TS 16 N, RG 20 W | TS 12 N, RG 20 W | TS 11 N, RG 17 W |
| TS 16 N, RG 19 W | TS 12 N, RG 19 W | TS 10 N, RG 20 W |
| TS 15 N, RG 20 W | TS 12 N, RG 18 W | TS 10 N, RG 19 W |
| TS 15 N, RG 19 W | TS 11 N, RG 20 W | TS 10 N, RG 18 W |
| TS 14 N, RG 20 W | TS 11 N, RG 19 W | TS 10 N, RG 17 W |
| TS 14 N, RG 19 W | TS 11 N, RG 18 W | |

**Applicant (if any):** David Geis, dba Alaska Snowboard Guides

### A. DESCRIPTION OF THE PROPOSED ACTION

David Geis, dba Alaska Snowboard Guides, has applied to the Bureau of Land Management (BLM) Anchorage Field Office (AFO) for a Special Recreation Permit (SRP) to operate commercial heli-skiing activities in the Neacola and Tordrillo mountains of Southcentral Alaska. Geis' requested operating area is located approximately 120 miles west of Anchorage. The operating area includes the Neacola Mountains Area of Critical Environmental Concern (ACEC), referred to as the "south block", and the Tordrillo Mountains, referred to as the "north block". The proposed action does not include any State or Native land selections.

The Neacola Mountains ACEC is scenic, with changes in elevation from 1,000 feet to nearly 8,000 feet. Rugged mountains, hanging valleys, and ice and snow fields dominate the landscape, interspersed with razor-sharp ridgelines. At the core of the Neacola Mountains ACEC are Blockade Glacier and Lake. Seasonally, Blockade Lake melts enough to reveal "apartment sized" blocks of ice floating in the water. This ACEC contains scenic and geologic features associated with the natural landscape of mountain peaks, glaciers, and spires. It is these scenic qualities for which the ACEC was designated in 2008 (EA, p. 2; BLM 2008).

## B. LAND USE PLAN CONFORMANCE

The proposed action is in conformance with the applicable land use plan because it is specifically provided for in the following land use plan decision(s):

The Ring of Fire Resource Management Plan and Record of Decision (ROF RMP/ROD), approved March 2008, provides the overall long-term management direction for lands encompassed by the proposed project. Specifically, the proposed action is consistent with the following decisions in the RMP/ROD:

### I. Lands and Realty I-2k: [Federal Land Policy and Management Act] FLPMA Permits
The BLM may issue land use permits if it is determined that the use conforms to agency plans, policies and programs, local regulations, and other requirements, and will not cause appreciable damage or disturbance to the public lands, their resources or improvements.

### O. Recreation O-1: Goal
Manage recreation to maintain a diversity of recreational opportunities. Opportunities for commercial recreation will be provided consistent with area objectives for recreation management.

### T. Visual Resources T-1: Goal
Manage visual resources consistent with the multiple use objectives for [Visual Resource Management] VRM classes and the classifications.

#### T-2: Management Actions T-2b: Manage the Neacola Mountains ACEC as VRM Class II.

##### Class II Objective:
To retain the existing character of the landscape. The level of change to the characteristic landscape should be low.

#### T-2c: Manage all other BLM-lands within the planning area as VRM Class IV (includes north block of the Neacola Mountains).

##### Class IV Objective:
To provide for management activities which require major modification of the existing character of the landscape. The level of change to the characteristic landscape can be high.

The ROD states the objectives for the Neacola Mountains ACEC as follows:

Goals:
> i. Create the Neacola Mountains ACEC to preserve identified values and outstanding natural scenery in an unspoiled setting.
> ii. Manage the ACEC to maintain the visual resource and scenic values.
> iii. Manage recreation to maintain the existing opportunities (e.g. unique recreational experiences in a remote and primitive setting).

Preliminary Management Objectives:
> i. Manage the ACEC to maintain the existing Recreational Opportunity Spectrum classifications.
> ii. Maintain the area for existing (Class II) VRM classification.
> iii. Develop further guidance for limitations to [off-highway vehicle] OHV use.
> iv. Work collaboratively with landowners in the area, recreation users, and adjacent communities to develop management strategies and define enforcement responsibilities.

## C.  IDENTIFY APPLICABLE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) DOCUMENTS AND OTHER RELATED DOCUMENTS THAT COVER THE PROPOSED ACTION.

- 2013 Environmental Assessment for Triumvirate LLC Heli-skiing (DOI-BLM-AK-A010-2013-0008-EA)
- 2008 Ring of Fire Resource Management Plan

## D.  NEPA ADEQUACY CRITERIA

*1.  Is the new proposed action a feature of, or essentially similar to, an alternative analyzed in the existing NEPA document(s)? Is the project within the same analysis area, or if the project location is different, are the geographic and resource conditions sufficiently similar to those analyzed in the existing NEPA document(s)? If there are differences, can you explain why they are not substantial?*

The new proposed action is nearly identical to Alternative 2, the Proposed Action Alternative of the 2008 Environmental Assessment.

Under the Proposed Action Alternative, the BLM would issue an initial one-year SRP to Alaska Snowboard Guides for commercial heli-skiing activities, sport fishing guiding, and associated commercial filming in conjunction with the SRP operations on BLM lands in the Neacola and Tordrillo Mountains, February through June, 2018. If the permit terms and conditions are found to be appropriate after the initial one-year period, the BLM may reissue the permit for a term not to exceed 10 years.

Ski areas will be accessed by a either an Airbus A-star B model helicopter or single turbine de Havilland Beaver airplane, both of which will carry enough fuel for the entire operation. No fuel caching, equipment storage, or gear storage would be permitted on BLM lands. Portable toilets will not be required due to the short time frame expected on BLM lands.

All landing areas would be GPS-logged for required BLM post-use reporting and radio dispatch needs by the commercial operator. The helicopter will drop off and pick up clients on the ski runs. The typical client to guide ratio will be 4:1. The ratio will take into account skier ability levels, weather, avalanche conditions, and other hazards. Mr. Geis would like to take groups of 1-4 clients to the Neacolas 1-4 times each week. This could result in up to 20 people being transported (clients and guides). However; in order to remain consistent with previously permitted operators, Alaska Snowboard Guides will be limited to a maximum of 130 landings per season.

2.      *Is the range of alternatives analyzed in the existing NEPA document(s) appropriate with respect to the new proposed action, given current environmental concerns, interests, and resource values?*

Yes, the ranges of alternatives presented in the 2013 Environmental Assessment for Triumvirate LLC Heli-skiing are appropriate and sufficient in respect to the current Proposed Action. There are no new issues or concerns that would prompt development or consideration of additional alternatives. The issues identified for analysis in the 2013 EA remain unchanged. There are no new issues around which to develop additional alternatives for the current Proposed Action.

3.      *Is the existing analysis valid in light of any new information or circumstances (such as, rangeland health standard assessment, recent endangered species listings, updated lists of BLM-sensitive species)? Can you reasonably conclude that new information and new circumstances would not substantially change the analysis of the new proposed action?*

Yes. There is no new information or any new circumstances to consider.

4.      *Are the direct, indirect, and cumulative effects that would result from implementation of the new proposed action similar (both quantitatively and qualitatively) to those analyzed in the existing NEPA document?*

Yes. The effects will be nearly similar to those that have been previously analyzed (for Triumvirate Heli-skiing), as both Triumvirate and Alaska Snowboard Guides will have two helicopters and one airplane.

5.      *Are the public involvement and interagency review associated with existing NEPA document(s) adequate for the current proposed action?*

The original Environmental Analysis went through public comment and the new activity is nearly identical to an activity that previously analyzed by AFO. No further public comment was pursued for the new activity. However, the Outdoor Recreation Planner did reach out to the two previously permitted guides for their opinions on the possibility of a new operator entering the same area. The original operator (Triumvirate) was vehemently opposed to allowing another operator, while the most recently permitted operator (Silverton) was not opposed to the addition of a third operator.

### E. PERSONS, AGENCIES, AND BLM STAFF CONSULTED

Note: Refer to the EA/EIS for a complete list of the team members participating in the preparation of the original environmental analysis or planning documents.

Douglas Ballou – Assistant Field Manager for Resources
April Rabuck – Assistant Field Manager for Lands and Realty
Bruce Seppi – Wildlife Biologist
Jenny Blanchard – Cultural Specialist

Stephanie Kuhns – Outdoor Recreation Planner

## F. CONCLUSION

Based on the review documented above, I conclude that this proposal conforms to the applicable land use plan and that the NEPA documentation identified in Part C of this DNA Worksheet fully covers the proposed action and constitutes BLM's compliance with the requirements of the NEPA.

_____  
Signature of the Responsible Official

1/28/2018  
Date

Note: The signed Conclusion on this worksheet is part of an interim step in the BLM's internal decision process and does not constitute an appealable decision. However, the lease, permit, or other authorization based on this DNA is subject to protest or appeal under 43 CFR § 4 and the program-specific regulations.

 

# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Anchorage Field Office
4700 BLM Road
Anchorage, Alaska 99507-2591
http://www.blm.gov/ak

## DECISION RECORD

Alaska Snowboard Guides
Environmental Assessment, DOI-BLM-AK-A010-2018-0003-DNA
Case File(s), AA-095233

### Decision

It is my decision to implement the proposed action on BLM-managed lands as described in the attached DNA Worksheet, DOI-BLM-AK-A010-2018-0003-DNA.

David Geis, dba Alaska Snowboard Guides, has applied to the Bureau of Land Management (BLM) Anchorage Field Office (AFO) for a Special Recreation Permit (SRP) to operate commercial heli-skiing activities in the Neacola and Tordrillo mountains of Southcentral Alaska. Geis' requested operating area is located approximately 120 miles west of Anchorage. The operating area includes the Neacola Mountains Area of Critical Environmental Concern (ACEC), referred to as the "south block", and the Tordrillo Mountains, referred to as the "north block". The proposed action does not include any State or Native land selections.

### Rationale for the Decision

Anchorage Field Office staff has reviewed the proposed action and appropriate project Design Features, as specified, will be incorporated into the project. Based on the review of the DNA worksheet, I have determined that the proposed action involves no significant impact to the human environment and no further analysis is required.

### Appeal Opportunities

This decision may be appealed to the Interior Board of Land Appeals, Office of the Secretary, in accordance with the regulations contained in 43 CFR § 4. To appeal you must file a Notice of Appeal with the BLM Anchorage Field Office through one of the following methods within 30 days from receipt of this decision: in writing via the US Postal Service mail system or other common carrier to 4700 BLM Road, Anchorage, Alaska 99507-2591; by hand delivery to 4700 BLM Road, Anchorage, Alaska; or by electronic means, such as electronic mail or facsimile, to blm_ak_appeals@blm.gov. The subject line in the email or facsimile must include "Notice of

Appeal – Anchorage Field Office". The appellant has the burden of showing that the decision appealed from is in error."

If you wish to file a petition pursuant to regulation 43 CFR § 4.21 (58 FR 4939, January 19, 1993) for a stay of the effectiveness of this decision during the time that your appeal is being reviewed by the Board, the petition for a stay must accompany your notice of appeal. Except as otherwise provided by law or other pertinent regulation, a petition for a stay of decision pending appeal shall show sufficient justification based on the following standards: (a) The relative harm to the parties if the stay is granted or denied, (b) The likelihood of the appellant's success on the merits, (c) The likelihood of immediate and irreparable harm if the stay is not granted, and (d) Whether the public interest favors granting the stay.

Copies of the notice of appeal and petition for a stay must also be submitted to each party named in this decision and to the Interior Board of Land Appeals and to the Office of the Solicitor (see 43 CFR § 4.413); Office of the Regional Solicitor, Alaska Region, U.S. Department of the Interior, 4230 University Drive, Suite 300, Anchorage, Alaska 99508; at the same time the original documents are filed with this office. If you request a stay, you have the burden of proof to demonstrate that a stay should be granted.

| | |
|---|---|
| /s/ Bonnie Million | 1/29/2018 |
| Bonnie Million | Date |
| Anchorage Field Manager | |

**Attachments**
DNA Worksheet
Stipulations
ANLICA §810 Analysis and Clearance
T&E Clearance
Cultural Resource Clearance