# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TRIUMVIRATE, LLC, | ) No. 1:18-cv-00511 |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Hon. Royce C. Lamberth |
|  | ) |
| RYAN ZINKE, *et al.*, | ) |
|  | ) |
| Federal Defendants. | ) |

## REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) [ECF NO. 15]

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 1 of 20

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

    I.    PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING ............................ 2

          A.    Plaintiff's Alleged Health and Safety Concerns Fail to Establish an
               Injury in Fact .................................................................................................... 2

          B.    Plaintiff's Alleged Economic Injuries Fail to Establish an Injury in
               Fact ................................................................................................................. 4

          C.    Plaintiff's Alleged Procedural Injuries Fail to Establish an Injury in
               Fact ................................................................................................................. 5

          D.    Plaintiff's Alleged Aesthetic Injury Fails to Establish an Injury in
               Fact ................................................................................................................. 5

    II.  PLAINTIFF FAILS TO ESTABLISH PRUDENTIAL STANDING ......................... 8

CONCLUSION ............................................................................................................. 14

Fed. Defs.' Reply in Supp. of Mot. to Dismiss               i
*Triumvirate, LLC v. Zinke, et al.,* No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 2 of 20

# TABLE OF AUTHORITIES

**Cases**

*Am. Trucking Ass'n v. Fed. Motor Carrier Safety Admin,*
724 F.3d 243 (D.C. Cir. 2013) .................................................................................................... 9

*ANR Pipeline Co. v. FERC,*
205 F.3d 403 (D.C. Cir. 2000) .................................................................................................... 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................................... 4

*Ass'n of Am. Physicians & Surgeons, Inc. v. Food & Drug Admin.,*
539 F. Supp. 2d 4 (D.D.C. 2008) ................................................................................................ 6

*Cal. Forestry Ass'n v. Thomas,*
936 F. Supp. 13 (D.D.C. 1996) ................................................................................................... 8

*Citizens Coordinating Comm. on Friendship Heights, Inc. v. Washington Metro. Transit Auth.,*
765 F.2d 1169 (D.C. Cir. 1985) .................................................................................................. 7

*City of Las Vegas v. FAA,*
570 F.3d 1109 (9th Cir. 2009) .................................................................................................. 10

*City of Olmstead Falls, Ohio v. Fed. Aviation Admin.,*
292 F.3d 261 (D.C. Cir. 2002) .................................................................................................... 8

*Clapper v. Amnesty Intern. USA,*
568 U.S. 398 (2013) .................................................................................................................... 2

*Clinton v. City of New York,*
524 U.S. 417 (1998) .................................................................................................................... 4

*Fleck & Assocs., Inc. v. Phoenix,*
471 F.3d 1100 (9th Cir. 2006) .................................................................................................... 7

*Food & Water Watch, Inc. v. Vilsack,*
808 F.3d 905 (D.C. Cir. 2015) ................................................................................................ 2, 3

*Grocery Mfrs. Ass'n v. EPA,*
693 F.3d 169 (D.C. Cir. 2012) .................................................................................................... 9

*Gunpowder Riverkeeper v. FERC,*
807 F.3d 267 (D.C. Cir. 2015) .................................................................................................. 13

*Guttenberg v. Emery,*
68 F. Supp. 3d 184 (D.D.C. 2014) .............................................................................................. 5

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice,*
816 F.3d 1241 (9th Cir. 2016) .................................................................................................... 3

*In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.,*
45 F. Supp. 3d 14 (D.C. Cir. 2014) ............................................................................................ 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................................................... 2

*Maiden Creek Assocs. v. U.S. Dept. of Transp.*,
   123 F. Supp. 3d 638 (E.D. Pa. 2015) ......................................................................... 11

*Metro. Edison Co. v. People Against Nuclear Energy*,
   460 U.S. 766 (1983)................................................................................................. 8, 11

*Mountain States Legal Found. v. Glickman*,
   92 F.3d 1228 (D.C. Cir. 1996) ........................................................................ 3, 4, 9, 13

*NetworkIP, LLC v. FCC*,
   548 F.3d 116 (D.C. Cir. 2008) ..................................................................................... 8

*Oberdorfer v. Jewkes,* 583 F. App'x 770 (9th Cir. 2014) ............................................... 14

*Overseas Shipholding Group, Inc. v. Skinner*,
   767 F. Supp. 287 (D.D.C. 1991) ................................................................................ 11

*Pai v. U.S. Citizenship & Immigration Servs.*,
   810 F. Supp. 2d 102 (D.D.C. 2011) ............................................................................. 4

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
   489 F.3d 1279 (D.C. Cir. 2007) ................................................................................... 3

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dept. of Agriculture*,
   415 F.3d 1078 (9th Cir. 2005) ................................................................................... 11

*RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp.*,
   47 F. Supp. 3d 1353 (M.D. Fla. 2014) ....................................................................... 10

*Realty Income Trust v. Eckerd*,
   564 F.2d 447 (D.C. Cir. 1977)....................................................................................... 9

*Sabino Canyon Tours, Inc. v. USDA Forest Serv.*,
   No. 17-cv-2758(CRC), 2018 WL 784061 n.5 (D.D.C. Feb. 8, 2018) ....................... 13

*Seminole Nation of Ok. v. Norton*,
   No. 01-5418, 2002 WL 1364249 (D.C. Cir. May 24, 2002) ...................................... 5

*Sierra Club v. Jewell*,
   764 F.3d 1 (D.C. Cir. 2014)......................................................................................... 4

*Strata Prod. Co. v. Jewell*,
   No. CV 13-205 JCH-GBW, 2014 WL 12789010 (D.N.M. Aug 11, 2014)............................ 11

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)..................................................................................................... 5

*Swanson Grp. Mfg. LLC v. Jewell*,
   790 F.3d 235 (D.C. Cir. 2015)..................................................................................... 4

*Town of Stratford, Connecticut v. FAA*,
  285 F.3d 84 (D.C. Cir. 2002) ................................................................................. 8

*United States v. W. Radio Servs. Co.*,
  869 F. Supp. 2d 1282 (D. Or. 2012) ....................................................................... 7

*Yount v. Salazar,* No. CV11-8171 PCT-DGC, 2014 WL 4904423(D. Ariz. Sept. 30, 2014) ...... *14*

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................................ 6

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ............................................................................................. 2, 7

**Statutes**

42 U.S.C. § 4321 ............................................................................................................. 9

42 U.S.C. § 4331 ............................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 2, 3, 8, 13, 14

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 2, 3, 14

**Regulations**

40 C.F.R. § 1508.14 ........................................................................................................ 8

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                                    iv
*Triumvirate, LLC v. Zinke, et al.,* No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 5 of 20

## INTRODUCTION

In our opening brief, Defendants demonstrated that Plaintiff lacks an imminent, concrete and particularized injury as required to establish Article III standing. Plaintiff's opposition brief fails to rebut this conclusion. Establishing Article III standing is Plaintiff's burden, and it has failed to carry that burden here. Plaintiff asserts speculative economic and health and safety concerns that fail to show that an injury is impending. Plaintiff attempts to rely on aesthetic or recreational injuries, but these injuries repeat the same economic and safety concerns, attempt to improperly raise interests of third parties, and likewise fail to establish an imminent, concrete injury. Therefore, Plaintiff fails to carry its burden in establishing Article III standing and its Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Likewise, Plaintiff fails to establish that its alleged harms fall within NEPA's zone of interests. NEPA is an environmental statute, and Plaintiffs who fail to assert an interest in the physical environment lack prudential standing to seek redress under NEPA. Plaintiff does not allege any interest in the environment or any environmental harm resulting from BLM's permitting decision. Therefore, Plaintiff fails to carry its burden in establishing prudential standing, and its NEPA claims should likewise be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

Plaintiff, a private company, has alleged three injuries: (1) potential economic injuries, *see* Corrected Declaration of Michael Overcast ("Overcast Decl."), ECF No. 18-1 ¶¶ 23, 26; 38d; 38e; 38f; 38g; 38j; 42, (2) public health and safety concerns, *see id.* at ¶¶ 19; 20; 38a; 38b; 38c; 41, and (3) alleged procedural violations, *see id.* at ¶¶ 25; 27-37; 38h; 38i. None of them show an imminent, concrete and particularized injury.

Plaintiff now attempts to raise an aesthetic injury. This attempt fails because it is not Plaintiff's own aesthetic interest that is asserted, but rather the purported aesthetic interests of third parties (potential customers) not before this Court. Even if Plaintiff's vicarious aesthetic interest was properly before this Court, it likewise fails to amount to an imminent, concrete and particularized injury. As Plaintiff failed to carry its burden to establish Article III standing, the Court should dismiss the Complaint in its entirety under Rule 12(b)(1).

Plaintiff likewise failed to carry its burden to establish prudential standing. Plaintiff fails to demonstrate that its alleged injuries fall within the zone of interests NEPA was designed to protect—the human environment. Plaintiff's opposition conspicuously fails to allege that any environmental harm will result from BLM's permitting decision. As such, the Court should dismiss Counts I through V under Federal Rule of Civil Procedure 12(b)(6).

## I.   PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING

### A.   Plaintiff's Alleged Health and Safety Concerns Fail to Establish an Injury in Fact

Plaintiff's concerns about public health and safety are precisely the type of speculative injuries that have been rejected by the Supreme Court and this Circuit. To avoid presenting injuries that are conjectural or hypothetical, as prohibited by the Supreme Court in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992), a plaintiff must show more than a "possible future injury;" he must show that harm has actually occurred or is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks and citations omitted). The Supreme Court recently re-emphasized that "threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (citations, alterations, and internal quotation marks omitted); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015).

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                          2
*Triumvirate, LLC v. Zinke, et al.*, No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 7 of 20

Defendants demonstrated that Plaintiff's speculative concerns of increased avalanches and helicopter crashes failed to meet the Supreme Court's definition of an injury in fact. *See* Fed. Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. and Mot. to Dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) ("Defs.' Mot."), ECF No. 15 at 9-11. Plaintiff's opposition fails to show that its concerns related to health and safety are "certainly impending." Plaintiff fails to address the cases cited in Defendants' Motion in which courts declined to find standing based on similarly speculative fears. *See In re Sci. Applications Int'l Corp. Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 24 (D.C. Cir. 2014); *Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1250 (9th Cir. 2016); *Food & Water Watch,* 808 F.3d 905 at 914. Instead, Plaintiff misrepresents Defendants' position, stating that "Defendants imply that a helicopter collision or avalanche must occur, with actual loss of life." Pl.'s Mem. in Opp'n to Mot. to Dismiss. ("Pl.'s Mem."), ECF No. 20 at 5. That is not Defendants' position; Defendants ask this Court to follow the precedent set forth by the Supreme Court and the D.C. Circuit and require that Plaintiff offer more than "allegations of possible future injury," as it must to establish standing.[1]

Plaintiff's reliance on cases that found a substantially increased risk of harm and a substantial probability of harm are inapposite to this case. Plaintiff cites to *Food & Water Watch* and *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1296 (D.C. Cir.

---

[1] Plaintiff implies that several accidents of the kind they allege here have recently occurred in the area. Pl.'s Mem. 35 ("Triumvirate did provide evidence (which the BLM only verified) that the type of catastrophic injury it is seeking to prevent—avalanches and heli-skier deaths—has recently occurred in Alaska."), 41 ("BLM confirmed multiple deaths occurred in recent years."). Since 2012, there have been no known accidents involving helicopter crashes or collisions. One person was fatally injured in a snow cornice collapse in 2014 when a heli-skiing operator trespassed on BLM lands closed to heli-skiing. Defs.' Mot. 4. That unfortunate death could not have been caused by the alleged harm Plaintiff complains of because no operators were allowed to conduct heli-skiing on that land. Three other people were fatally injured in avalanches on State of Alaska lands between 2012 and 2014, and Plaintiff has provided no information as to whether those deaths occurred in areas of so-called "stacking" heli-skiing operators. *Id.*

2007), both of which underscore the requirement that the alleged injury be impending when engaging in a case-by-case analysis of whether standing has been sufficiently alleged. *See Pub. Citizen, Inc,* 489 F.3d at 1296 ("In applying the 'substantial' standard, we are mindful, of course, [of] the constitutional requirement of imminence as articulated by the Supreme Court[.]"). Plaintiff then relies on *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234–35 (D.C. Cir. 1996) as analogous to its alleged health and safety concerns. Pl.'s Mem. 6. However, the D.C. Circuit's holding in *Glickman* was based on extensive and detailed evidence before the court, including information provided by the plaintiffs and statistical projections by the agency that detailed increased risks of wildfire under various project alternatives. *See Glickman,* 92 F.3d at 1234–35. Here, Plaintiff has not provided the Court with any information regarding increased frequency of avalanches or helicopter crashes, including over the last year when three companies were permitted to operate helicopters in the same 428,000 acre area. Plaintiff fails to meet its burden that its health and safety concerns establish an injury in fact.

B.  Plaintiff's Alleged Economic Injuries Fail to Establish an Injury in Fact

Plaintiff offers only an unsupported, subjective concern that its position in the Alaskan heli-skiing marketplace is threatened. Pl.'s Mem. 8-9. When a plaintiff alleges that it will suffer future economic harm as the result of a government action, the plaintiff must demonstrate a substantial probability of injury-in-fact through its complaint and declarations. *See Sierra Club v. Jewell*, 764 F.3d 1, 7 (D.C. Cir. 2014); *see also Ashcroft v. Iqbal,* 556 U.S. (2009) (holding that courts need not accept as true "naked assertion[s] devoid of further factual enhancement"); *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 238, 242, 245 (D.C. Cir. 2015) (finding no standing because plaintiffs did not proffer sufficient evidence of injury resulting from the challenged government action). Plaintiff cites to *Clinton v. City of New York*, 524 U.S. 417, 433

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                          4
*Triumvirate, LLC v. Zinke, et al.,* No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 9 of 20

(1998), but, as this Court has held, plaintiffs in that case "alleged specific, concrete and imminent economic injury due to Defendants' actions." *Pai v. U.S. Citizenship & Immigration Servs.*, 810 F. Supp. 2d 102, 107 (D.D.C. 2011).  Plaintiff failed to make any colorable showing that its business has actually suffered or is likely to suffer as a result of an additional permit over a 428,000 acre area.  Therefore, Plaintiff fails to meet its burden that its speculative economic concerns establish an injury in fact.

C.  Plaintiff's Alleged Procedural Injuries Fail to Establish an Injury in Fact[2]

The parties agree that an alleged procedural injury, alone, is insufficient to establish Article III standing.  *See* Pl.'s Mem. 9; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). The parties differ, however, on whether Plaintiff has alleged a separate imminent, concrete and particularized injury.  Plaintiff relies on its speculative economic and health and safety concerns. However, as discussed in Defendants' Motion and *supra*, those do not establish standing.  As such, Plaintiff fails to meet its burden that its alleged procedural injury establishes an injury in fact.

D.  Plaintiff's Alleged Aesthetic Injury Fails to Establish an Injury in Fact

Plaintiff's newly asserted aesthetic or recreational injury fails to establish standing because it either repackages Plaintiff's previously discussed three categories of injuries (economic, safety, and procedural), or it purports to assert the aesthetic interests of third parties

---

[2] Plaintiff does not address Defendants' argument that it lacks standing to allege an interest in Dall sheep.  As Defendants argued in their motion, Plaintiff lacks standing to advance the Dall sheep claim because Plaintiff has not alleged an interest in Dall sheep, cannot do so because of permit conditions that require it to avoid Dall sheep, and has previously represented that Dall sheep do not inhabit the areas where Plaintiff engages in heli-skiing.  *See* Defs.' Mot. 11-12. Therefore, Plaintiff has waived an argument to the contrary.  *See Guttenberg v. Emery*, 68 F. Supp. 3d 184, 193 (D.D.C. 2014); *see also Seminole Nation of Ok. v. Norton,* No. 01-5418, 2002 WL 1364249, at *1 (D.C. Cir. 2002) ("As an initial matter, appellant arguably waived its arguments . . . by failing to raise them in its response to the motion to dismiss.").

not before this Court.  Plaintiff claims that it has alleged an aesthetic or recreation interest "in favorable snow conditions" through paragraphs 16, 38(c)-(g), (i), 41, and 42 of the Overcast Declaration and paragraphs 110-112 of its Complaint.  *See* Pl.'s Mem. 7-8.  However, the majority of these paragraphs assert either speculative economic injuries to Plaintiff's business interests or concerns about public health and safety.  For example, paragraphs 38(d)-(g) and 42 of the Overcast Declaration discuss increased "competition for the prime skiing locations;" "a reduction in business viability;" and increased costs for fuel and expenses, which could lead Plaintiff to decrease its investments in the area.  Overcast Decl. ¶¶ 38(d)-(g) and 42.  Paragraphs 38(c) and 41 focus on health and safety concerns, and paragraph 38(i) focuses on Plaintiff's alleged procedural injury.  Similarly, the remaining paragraphs purport to offer the expert opinion of an unqualified declarant, *id.* at ¶ 41, or repeat previous assertions, *see* Compl. ¶¶ 110-112.  Plaintiff's purported aesthetic interests merely restate its economic, safety, or procedural allegations and do not establish standing.

   If any aesthetic or recreational interests are asserted, they are not Plaintiff's own interests but rather those of Plaintiff's potential customers.  Plaintiff repeatedly points to the title of its permit, a "special recreation permit," in support of its argument that it enjoys a recreational interest in the permit area.  *See* Pl.'s Mem. 8, 29.  But the permit is plainly for "commercial helicopter skiing operations on BLM lands in the Neacola and Tordrillo Mountains." Triumvirate Permit, Defs. Mot. Ex. 5, ECF No. 13-5, at 1.  The permit allows Triumvirate, a limited liability company, to provide commercial heli-skiing to paying customer.  Any recreation interest in the area belongs to Triumvirate's patrons, who are not before this Court.  Such a framing of aesthetic interests in the area thus fails because a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of

third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975); *see also Ass'n of Am. Physicians & Surgeons, Inc. v. Food & Drug Admin.*, 539 F. Supp. 2d 4, 18 (D.D.C. 2008), *aff'd sub nom. Ass'n of Am. Physicians v. FDA,* 358 F. App'x 179 (D.C. Cir. 2009).

Triumvirate's own allegations confirm it has no recreational interests, but instead attempts to assert the interests of third parties. The paragraphs cited in Plaintiff's Memorandum focus on how the company's potential customers may be unhappy with the prospect of someone else skiing on snow that they wish to use. *See* Overcast Decl. ¶ 38(f) ("This breaks a covenant with our clients, who come from all over the world to recreate on the untracked powder runs we offer."). Triumvirate, LLC has no standing to assert the aesthetic or recreational interests of potential customers or any other third parties. "Business entities ... cannot support their standing by asserting the aesthetic or recreational interests of their employees or customers." *United States v. W. Radio Servs. Co.*, 869 F. Supp. 2d 1282, 1286 n.2 (D. Or. 2012); *see Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1106 (9th Cir. 2006). Any purported aesthetic or recreational interests are held by third parties not before this Court and cannot establish Plaintiff's standing.

Even if the Court accepts Plaintiff's aesthetic or recreational injuries, they are not imminent, concrete and particularized.[3] Similar to Plaintiff's alleged economic, safety, and procedural injuries, an aesthetic or recreational injury is a speculative, "possible future injury" and not one that is "certainly impending." *Whitmore*, 495 U.S. at 158. Plaintiff's speculative fear that another heli-skiing operator may be in flight, in the same 428,000 acre area, at the same

---

[3] It is worth noting that Plaintiff alleges an aesthetic harm under NEPA from conduct it is also engaging in. *See W. Radio Serv. Co.,* 869 F. Supp. 2d at 1286 ("The court also notes that [plaintiff] is alleging an aesthetic harm from conduct—the construction of a new tower on Walker Mountain—in which he seeks to engage himself.").

time that Plaintiff has customers interested in its services is too remote to establish an imminent injury. *See* Defs.' Mot. 10-12; *see also Citizens Coordinating Comm. on Friendship Heights, Inc. v. Washington Metro. Transit Auth.,* 765 F.2d 1169, 1173 (D.C. Cir. 1985) ("Aesthetic injury presupposes the ability to sense one's surroundings . . . Though a corporation is a person for some purposes, we would be most reluctant to hold that it has senses and so can be affronted by deteriorations in its environment. That is beyond the reach of legal fiction and belongs in the realm of poetic license."). Thus, similar to Plaintiff's other three alleged injuries, Plaintiff fails to meet its burden that it has suffered an injury in fact, and its Complaint should be dismissed under Rule 12(b)(1). [4]

## II.  PLAINTIFF FAILS TO ESTABLISH PRUDENTIAL STANDING

"The Supreme Court has defined NEPA's zone of interest as the 'physical environment—the world around us so to speak.'" *Cal. Forestry Ass'n v. Thomas*, 936 F. Supp. 13, 21 (D.D.C. 1996) (quoting *Metro. Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 772 (1983)). Accordingly, a plaintiff only enjoys prudential standing to bring a claim under NEPA where the plaintiff asserts an environmental interest. *ANR Pipeline Co. v. FERC*, 205 F.3d 403, 408 (D.C. Cir. 2000); *Town of Stratford v. FAA*, 285 F.3d 84, 88 (D.C. Cir. 2002). In *Metropolitan Edison*, the Court cautioned against reading "human environment" in the statute too broadly for fear that if "give[n] the broadest possible definition, the words 'adverse environmental effects' might embrace virtually any consequence of a governmental action that someone thought 'adverse.'" *Metro. Edison Co.,* 460 U.S. at 772. NEPA's regulations echo this limited definition, defining

---

[4] Plaintiff discusses causation and redressability in its Memorandum. *See* Pl.'s Mem. 10-11. Defendants did not raise these standing elements and will defer to the Court if it wishes to review them *sua sponte* as it is entitled to do. *NetworkIP, LLC v. FCC,* 548 F.3d 116, 120 (D.C. Cir. 2008) ("It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*.").

"human environment" to include "the natural and physical environment. . . . This means that economic or social effects are not intended by themselves to require preparation of an [EIS]." 40 C.F.R. § 1508.14. Further, the purpose of NEPA is not to protect economic interests, and plaintiffs who assert purely economic injuries do not have standing to challenge an agency action under NEPA. *City of Olmstead Falls v. FAA*, 292 F.3d 261, 267 (D.C. Cir. 2002) ("[A]s a matter of prudential standing, 'we have squarely held that a NEPA claim may not be raised by a party with no claimed or apparent environmental interest. It cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant.'") (internal citation omitted). And, as with Article III standing, the party invoking this Court's jurisdiction bears the burden of establishing prudential standing. *Am. Trucking Ass'n v. Fed. Motor Carrier Safety Admin*, 724 F.3d 243, 246 (D.C. Cir. 2013) (citing *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012)).

In its opposition, Plaintiff does not allege that the issuance of the permit to Alaska Snowboard Guides ("ASG") will cause environmental harm. Rather, Plaintiff attempts to argue that its speculative and unsubstantiated safety and recreation interests fall within the "sweeping list of interests" protected by NEPA. Pl.'s Mem. 11 (citing *Mountain States Legal Fund*, 92 F.3d 1228, 1235-36 (D.C. Cir. 1996)).[5] As discussed *supra*, Plaintiff's purported "recreational interests" should be rejected, both as a transparent attempt to characterize an economic interest in

_____

[5] Interestingly, the language Plaintiff quotes is found in a sentence where the D.C. Circuit reminded that "[d]espite NEPA's rather sweeping list of interests intended to be served, *see* 42 U.S.C. §§ 4321, 4331, we have said that they do not include purely monetary interests, *such as the competitive effect that a construction project might have on plaintiff's commercial enterprise.*" *Mountain States Legal Found.*, 92 F.3d at 1235-36 (citing *Realty Income Trust v. Eckerd*, 564 F.2d 447, 452 (D.C. Cir. 1977)) (emphasis added). Defendants agree that Plaintiff's economic concerns regarding the entrance of a competitor into the market do not fall within NEPA's zone of interests.

Fed. Defs.' Reply in Supp. of Mot. to Dismiss
*Triumvirate, LLC v. Zinke, et al.*, No. 1:18-cv-00511

9

providing heli-skiing services to its paying customers as an interest in the recreational value of the permit area and because a business entity may not support its standing by asserting purported interests of its customers. Likewise, for the reasons stated above, Plaintiff's purported safety interests should be rejected as too speculative to support a finding of a concrete injury-in-fact under Article III. But even if this Court finds that Plaintiff's safety concerns are sufficient to support Article III standing, this Court must also find environmental harms for Plaintiff's claims to fall within NEPA's zone of interests.

NEPA is an environmental statute, and a plaintiff must assert an environmental interest for its claims to fall within NEPA's zone of interests. Plaintiff cites no authority to the contrary. *City of Las Vegas* did not involve a free-standing public safety claim as Plaintiff presents here, but rather considered a proposed flight path's impacts on air quality, noise, and public safety, ultimately finding standing because "the city alleges a concrete injury to its interests **in the environment and** in safety which falls within the zone of interests of NEPA." *City of Las Vegas v. FAA*, 570 F.3d 1109, 1114 (9th Cir. 2009) (emphasis added).[6] Likewise, *RB Jai Alai* involved allegations of injuries to the aesthetic value of the area, air pollution, and the release of contaminants, with public health and safety concerns arising from the presence of additional vehicles and emissions. *RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp.*, 47 F. Supp. 3d 1353, 1363 (M.D. Fla. 2014). And, in *Overseas Shipholding Group*, Plaintiff:

> [C]hallenge[d] a rulemaking because, in its view, enacting the rule without performing a full Environmental Impact Statement ("EIS") creates a risk of air and water pollution in the areas in which the company and its employees do business. This allegation of **harm to the environment** will suffice to bring an action under NEPA because **the statute was intended to address issues of air and water pollution**.

---

[6] Plaintiff chose to omit the bolded section of the above quote in its case parenthetical. *See* Pl's. Mem. at 12.

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                          10
*Triumvirate, LLC v. Zinke, et al.*, No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 15 of 20

. . .

> OSG may also sue under NEPA in its own right—independently of the interests of its employees—in order to redress the injuries which may be sustained **as a result of the alleged increase in air and water pollution**.

*Overseas Shipholding Group, Inc. v. Skinner*, 767 F. Supp. 287, 292 (D.D.C. 1991) (emphasis added) (internal citations omitted).

Plaintiff's alleged safety harms are an increased risk of a mid-air helicopter collision and that the presence of an additional heli-skiing provider will increase the risk that Plaintiff's employees and clients will be caught in an avalanche. *See* Overcast Decl. at ¶¶ 15, 19, 38, 41. Neither allegation is supported by any scientific or other evidence establishing that either is likely or how ASG's activities will increase their likelihood—Plaintiff relies entirely on conclusory allegations in the declaration of an interested party. *See* Overcast Decl. ¶ 2 ("I am an owner and the General Manager of Triumvirate, LLC"). But, more fundamentally, Plaintiff does not allege that either helicopter collisions or avalanches will harm the environment. Plaintiff has not directed this Court to a single case where a plaintiff was permitted to assert a safety interest wholly untethered from a harm to the physical environment. NEPA embraces no such interest—as the Supreme Court has made plain, "although NEPA states its goals in sweeping terms of human health and welfare, these goals are ends that Congress has chosen to pursue by means of protecting the physical environment." *Metro. Edison Co.,* 460 U.S. at 773.

Put simply, Plaintiff "has failed to show any relationship between risks to human health and environmental harms" and consequently "its injury falls outside of NEPA's zone of interests." *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't. of Agric.*, 415 F.3d 1078, 1103-04 (9th Cir. 2005); *see also Maiden Creek Assocs. v. U.S. Dep't. of Transp.*, 123 F. Supp. 3d 638, 648 n.15 (E.D. Pa. 2015), *aff'd* 823 F.3d 184 (3d Cir. 2016)

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                                          11
*Triumvirate, LLC v. Zinke, et al.,* No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 16 of 20

(holding that "allegations regarding potentially unsafe conditions" stemming from a highway corridor project fall outside of NEPA's zone of interests under the *Metro. Edison* analysis); *Strata Prod. Co. v. Jewell*, No. CV 13-205 JCH-GBW, 2014 WL 12789010, at *14 (D.N.M. Aug 11, 2014) (holding that "safety and economic interests are insufficient to fall within NEPA's zone of interests without an additional environmental interest.").

Plaintiff's alleged economic injuries fare no better.[7]  As demonstrated in Defendants' Motion, Plaintiff's alleged harms are primarily economic.  Defs.' Mot. 12-15.  Plaintiff argues that such a characterization "distorts" and "disfigures" Mr. Overcast's declaration, Pl's. Mem. 13-14, but the declaration speaks for itself.  Paragraph 38 contains a list of ten ways the issuance of a permit to ASG allegedly "injures and materially damages Triumvirate."  Overcast Decl. ¶ 38.  Half of the alleged harms involve injuries to Triumvirate's business interests from a competing heli-skiing provider entering the market: (1) issuance of the permit will "allow more skiers and helicopters in the same terrain, thereby creating competition for the prime skiing locations," *id.* at ¶ 38(d); (2) an identical allegation to that in paragraph 38(d), coupled with a conclusory assertion that "[i]t also increases the risk of avalanches and loss of life," *id.* at ¶ 38(e); (3) because Plaintiff alleges that "[a] powder run can be skied once every time it snows," a new heli-skiing provider sharing use of those runs "breaks a covenant with our clients . . . [and] will likely result in a reduction in business viability," *id.* at ¶ 38(f); (4) issuance of the permit causes Triumvirate to "spend considerable fuel and expense flying to a location only to find tracked conditions and other groups of people," *id.* at ¶ 38(g); and finally, (5) issuance of the permit "injures Triumvirate's operational, business, and economic interests in marketing a

---

[7] As discussed *supra,* Plaintiff's alleged injuries to its economic and business interests are not sufficiently concrete to convey Article III standing.  But, assuming *arguendo* that Plaintiff has met its Article III burden, bare economic injuries fall outside of NEPA's zone of interests.

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                                                12
*Triumvirate, LLC v. Zinke, et al.*, No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 17 of 20

premium helicopter skiing experience to guests by increasing the number of third parties and helicopters that access the same terrain." *Id.* at ¶ 38(j).

At bottom, NEPA is an environmental statute, and "[t]he economic and competitive harms that [Plaintiff] points to are not within the zone of interest of NEPA and therefore cannot suffice to provide standing for its NEPA claim." *Sabino Canyon Tours, Inc. v. USDA Forest Serv.*, No. 17-cv-2758(CRC), 2018 WL 784061, at *10 n.5 (D.D.C. Feb. 8, 2018) (citing *Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 274 (D.C. Cir. 2015)). Plaintiff had no expectation that its permit to conduct commercial heli-skiing on Federal lands included the exclusion of other users. *See* Decl. of Stephanie Kuhns, ECF No. 13-1 at ¶¶ 4-5 ("Mr. Overcast . . . expressed dismay that BLM was not going to limit the number of permits in the area, and stated that it would be unfair for him to pay for the [EA] while other potential operators would not have to contribute to the cost of NEPA compliance."). Plaintiff's attempt to use NEPA to enforce a non-existent right to exclusive enjoyment of BLM-managed lands should be rejected.

Plaintiff has failed to allege a sufficiently concrete, particularized, and imminent injury in fact to establish standing to bring this suit in the Federal District Court.[8] But even if this Court concludes that Plaintiff has Article III standing, Plaintiff's alleged injuries to its safety and economic interests, absent a tie to harm to the physical environment, fall outside of NEPA's zone

---

[8] If this Court finds one of Plaintiff's purported injuries satisfies the requirements of Article III, that same injury must also satisfy NEPA's zone of interests. *See Mountain States Legal Found.*, 92 F.3d at 1232 ("we think it worthwhile to make the point . . . that on any given claim the injury that supplies constitutional standing must be the same as the injury within the requisite 'zone of interests' for purposes of prudential standing."). Defendants' briefing demonstrates that none of the purported injuries amount to an imminent and concrete injury under Article III, but even if the Court finds otherwise, Plaintiff's three injuries, and newly raised aesthetic injury, fail to allege an injury within NEPA's zone of interests. *See Oberdorfer v. Jewkes*, 583 F. App'x 770, 773 (9th Cir. 2014); *Yount v. Salazar*, No. CV11-8171 PCT-DGC, 2014 WL 4904423, at *7 (D. Ariz. Sept. 30, 2014), *aff'd sub nom. Nat'l Mining Ass'n v. Zinke*, 877 F.3d 845 (9th Cir. 2017).

of interests.  Plaintiff lacks prudential standing to advance its NEPA claims, and this Court should dismiss those claims under rule 12(b)(6).

## CONCLUSION

Plaintiff fails to satisfy the injury in fact element of Article III standing because its alleged injuries are neither concrete and particularized nor imminent.  Plaintiff's filings allege potential economic injuries, theoretical public health and safety concerns, and procedural violations of NEPA.  None of those injuries establish the requisite injury in fact.  Plaintiff's purported aesthetic injury is not properly before this Court as it is a third party interest, but even if it was before the Court, it similarly fails.  As such, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1).  Further, Plaintiff fails to demonstrate that its alleged injuries fall within NEPA's zone of interests as required to establish prudential standing, and the Court should dismiss Counts I through V under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted this 26th day of March, 2018,

JEFFREY H. WOOD
United States Department of Justice
Acting Assistant Attorney General
Environment & Natural Resources Division

/s/  *S. Derek Shugert*
S. DEREK SHUGERT (OH No. 84188)
TYLER M. ALEXANDER (CA Bar No. 313188)
Natural Resources Section
Trial Attorneys
PO Box 7611
Washington, DC  20044-7611
Tel: (202) 514-9269 (Shugert)
Tel: (202) 305-0238 (Alexander)
shawn.shugert@usdoj.gov;
tyler.alexander@usdoj.gov

Attorneys for Federal Defendants

Fed. Defs.' Reply in Supp. of Mot. to Dismiss                                                                    14
*Triumvirate, LLC v. Zinke, et al.*, No. 1:18-cv-00511

Case 3:18-cv-00091-HRH   Document 23   Filed 03/26/18   Page 19 of 20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 26th day of March, 2018, I filed the foregoing

document electronically through the CM/ECF system, which caused all parties or counsel of

record to be served by electronic means, as more fully reflected on the Notice of Electronic

Filing.

_____ /s/ *S. Derek Shugert* _____

S. Derek Shugert
Attorney for Federal Defendants