IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TRIUMVIRATE, LLC, d/b/a TORDRILLO )
MOUNTAIN LODGE,                   )
                                  )
                       Plaintiff, )
                                  )
    vs.                           )
                                  )
RYAN ZINKE, in his capacity as Secretary of )
the Interior, et al.,             )
                                  )   No. 3:18-cv-0091-HRH
                      Defendants. )
_____)

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's complaint.[1] The motion to dismiss is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Triumvirate, LLC, d/b/a as Tordrillo Mountain Lodge. Defendants are Ryan Zinke, in his capacity as the Secretary of the Interior; the U.S. Department of Interior; the U.S. Bureau of Land Management, an agency of the U.S. Department of Interior; and

---

[1]Docket No. 15.

[2]Docket Nos. 20 and 39.

Brian Steed, Deputy Director of the U.S. Bureau of Land Management, exercising authority as the Director.

In 2012, plaintiff submitted an application to the BLM for a special recreation permit that would allow plaintiff to conduct commercial heli-skiing on lands managed by the BLM in the Tordrillo and Neacola Mountains. This region includes the Neacola Mountains Area of Critical Environmental Concern (ACEC), an area designated as such because of its scenic value.

After plaintiff submitted its application, the BLM conducted an environmental assessment (EA) because a portion of the lands carry the ACEC designation. Plaintiff paid for half of the cost of doing the EA. In the EA, the BLM determined that plaintiff's proposed operations were consistent with the Ring of Fire Resource Management Plan, which "provides overall long-term management direction for the lands encompassed by the proposed project."[3]

On February 20, 2014, the BLM issued a Record of Decision and a Finding of No Significant Impact.[4] The BLM found that "[a]uthorizing the requested SRP will provide a unique recreational experience in a remote and primitive setting, consistent with the RMP/ROD goals for the Neacola ACEC . . . without compromising other resource values,

---

[3]Exhibit 3 at 5, Complaint for Judicial Review of Agency Action, Docket No. 1.

[4]Exhibits 2 and 4, Complaint for Judical Review of Agency Action, Docket No. 1.

specifically, the visual resources or wilderness characteristics. . . ."[5]  Plaintiff's one-year special recreation permit was issued the same day.  Plaintiff's permit was later extended for ten years.

In 2016, Silverton Mountain Guides applied for a special recreation permit for heli-skiing in the Tordrillo and Neacola Mountains.  "Using a Determination of NEPA Adequacy (DNA), the BLM determined that the previous EA sufficiently analyzed the potential environmental impacts. . . ."[6]  In February 2017, the BLM issued a special recreation permit to Silverton Mountain Guides.  Plaintiff contends that it first learned that Silverton Mountain Guides had been issued a permit when one of its helicopter pilots encountered a Silverton Mountain Guides' helicopter while flying.[7]  Michael Overcast, plaintiff's owner and general manager, avers that he immediately expressed his concerns to the BLM about "stacking additional helicopter ski operators in the same terrain" because "it creates safety hazards, unnecessarily increases risk, and degrades the recreation resource."[8]

Overcast avers that in December 2017, he heard a rumor that the BLM may have issued a special recreation permit to Alaska Snowboard Guides (ASG) and so he contacted

---

[5]Record of Decision, Exhibit 2 at 2, Complaint for Judicial Review of Agency Action, Docket No. 1.

[6]Declaration of Stephanie Kuhns at 3, ¶ 9, which is appended to Federal Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, Docket No. 13.

[7]Corrected Declaration of Michael Overcast at 10, ¶ 29, Docket No. 36.

[8]Id.

Stephanie Kuhns with the BLM.[9] Overcast avers that Kuhns told him there was a pending application for a permit and that he "replied that Triumvirate was opposed to the issuance of an additional helicopter ski permit [in] the area where it operates."[10]

On January 28, 2018, the BLM issued a Record of Decision (ROD) to grant a special recreation permit to ASG to conduct heli-skiing operations in the Tordrillo and Neacola Mountains.[11] The BLM again used a DNA to determine that the previous EA sufficiently analyzed any environmental impacts.[12] In the DNA, the BLM determined that ASG's proposed project was nearly identical to plaintiff's project, that there were no new information or circumstances to consider, and that "the direct, indirect, and cumulative effects that would result from the implementation of the new proposed action [were] similar (both quantitatively and qualitatively) to those analyzed in the existing" EA.[13] The BLM also noted that while there had been no public comment on ASG's permit application, it had "reach[ed] out to the two previously permitted guides for their opinions on the possibility of a new operator entering the same area. The original operator (Triumvirate) was vehemently

---

[9]Id. at 10, ¶ 30.

[10]Id.

[11]Exhibit 1, Complaint for Judicial Review of Agency Action, Docket No. 1.

[12]Exhibit 6, Complaint for Judicial Review of Agency Action, Docket No. 1.

[13]Id. at 4-5.

-4-

opposed to allowing another operator, while the most recently permitted operator (Silverton) was not opposed to the addition of a third operator."[14]

On March 5, 2018, plaintiff commenced this action to challenge the BLM's issuance of a special recreation permit to ASG. In its complaint, plaintiff asserts violations of the National Environmental Policy Act (NEPA), the Federal Land Policy and Management Act (FLPMA), and the Administrative Procedures Act (APA).

Defendants now to move to dismiss plaintiff's complaint.

## Discussion

First, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendants move to dismiss plaintiff's complaint on the ground that plaintiff lacks constitutional standing. "'Because standing . . . pertain[s] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss.'" Carijano v. Occidental Petroleum Corp., 643 F.3d 1216, 1227 (9th Cir. 2011) (quoting Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010)). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Here, defendants have made a factual attack. "In resolving a factual attack

---

[14]Id. at 5.

on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. "The court need not presume the truthfulness of the plaintiff's allegations." Id. "The plaintiff . . . bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Wash. Envtl. Council v. Bellon, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "'[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]'" Id. at 1139 (quoting Lujan, 504 U.S. at 561).

"The 'irreducible constitutional minimum of standing' consists of three elements: the plaintiff must have (1) suffered an injury in fact; (2) that was caused by the defendant's challenged conduct; and (3) that would be redressed by the remedy the plaintiff seeks." Desert Water Agency v. U.S. Dep't of the Interior, 849 F.3d 1250, 1253 (9th Cir. 2017) (quoting Lujan, 504 U.S. at 560-61). Defendants argue that plaintiff has not shown that it suffered an injury in fact, "the '[f]irst and foremost' of standing's three elements." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103 (1998)).

"A plaintiff establishes injury in fact, if he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1042 (9th Cir. 2017) (quoting Spokeo, Inc., 136 S. Ct. at 1547). The "injury must have

actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus." Schmier v. U.S. Court of Appeals for Ninth Circuit, 279 F.3d 817, 821 (9th Cir. 2002).

First, plaintiff alleges injury to its economic interests.[15] Overcast avers that the January 28, 2018 decision "injures Triumvirate because it authorizes more skiers and more helicopters to access the same terrain, thereby creating competition for the prime skiing locations."[16] He further avers that "[a] significant degradation of the powder skiing recreation resource will occur" and that this will "likely result in a reduction in business viability."[17] He avers that the January 28, 2018 "decision injures Triumvirate's operational, business, and economic interests in marketing a premium helicopter skiing experience to guests by increasing the number of third parties and helicopters that access the same terrain."[18]

Plaintiff points out that the Supreme "Court routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement]. . . . It follows logically that any . . . petitioner who is likely to suffer economic injury as a result of [governmental action] that

---

[15]Complaint for Judicial Review of Agency Action at 29, ¶ 111, Docket No. 1.

[16]Overcast Declaration at 13, ¶ 38e, Docket No. 36.

[17]Id. at 13-14, ¶ 38f.

[18]Id. at 15, ¶ 38j.

changes market conditions satisfies this part of the standing test." Clinton v. City of New York, 118 S. Ct. 2091, 2100 (1998) (citation omitted). Here, plaintiff argues that it has presented evidence, in the form of Overcast's declaration, that the introduction of a third operator into the area in which plaintiff operates will harm plaintiff's economic interest. Plaintiff argues that this is sufficient to show that it has constitutional standing.

Overcast's averments are not sufficient to establish that plaintiff has suffered an injury in fact to its economic interest. The economic harm that Overcast claims is hypothetical and speculative. Plaintiff has offered nothing to show that it is in fact suffering economic harm as a result of the January 28, 2108 decision or that it is likely to suffer such harm. It is worth noting that ASG has now had its special recreation permit for three months, but plaintiff has not offered any specific evidence that ASG is actually bringing heli-skiers to the Tordrillo and Neacola Mountains or any specific evidence as to how its economic interest has been affected because ASG has a permit to operate in the same area.

Plaintiff also alleges that it has suffered an injury to its recreational interest.[19] Plaintiff alleges that the January 28, 2018 decision "degrades the overall quality of the powder skiing resource. . . ."[20] Overcast avers that "[p]owder snow is a finite resource that cannot be skied

---

[19] In their opening brief, defendants contended that plaintiff had alleged an environmental injury to Dall sheep, but plaintiff has clarified in its briefing that it is not relying on any alleged environmental injury to Dall sheep but rather that it has asserted a recreational injury.

[20] Complaint for Judicial Review of Agency Action at 29, ¶ 111, Docket No. 1.

over and over and expect our guests to enjoy."[21]  "While 'generalized harm' to the environment isn't enough to supply standing, the Supreme Court has emphasized that particularized harm to 'recreational' or even 'mere esthetic interests' is sufficient." In re Big Thorne Project, 857 F.3d 968, 973–74 (9th Cir. 2017) (quoting Summers v. Earth Island Institute, 555 U.S. 488, 494 (2009)).  Plaintiff insists that as the holder of a BLM-issued "special recreation permit", it has a recreational interest in favorable ski conditions.

However, "business entities generally do not have aesthetic or recreational interests, and they cannot support their standing by asserting the aesthetic or recreational interests of their employees or customers." United States v. W. Radio Services Co., 869 F. Supp. 2d 1282, 1286 n.2 (D. Or. 2012).  Any recreational interest in untracked powder runs would belong to plaintiff's customers, not to plaintiff.  The fact that plaintiff has a "special recreation permit" from the BLM does not change that.  The permit allows plaintiff to provide heli-skiing for its customers on BLM-managed land.  But, the permit does not give plaintiff any recreational interest in untracked powder runs.

Plaintiff also alleges that its interest in human health and safety has been injured as a result of the January 28, 2018 decision because the addition of a third heli-skiing operator increases the risk of avalanches and catastrophic accidents.[22]  Overcast avers that

---

[21]Overcast Declaration at 14, ¶ 38f, Docket No. 36.

[22]Complaint for Judicial Review of Agency Action at 29, ¶¶ 108-109, Docket No. 1.

> [i]f multiple operators are stacked on the same terrain, they compete for the limited terrain that is suitable and available that day. That creates an incentive for one operator to access it before the other operator to provide the guests with untracked snow. That incentive works against efforts to minimize avalanche risk. It is difficult to build in geographic buffers from multiple operators if all may access the same limited terrain. Stacking operators in the same terrain creates the risk that one group may inadvertently ski onto terrain above a group from another operator, potentially causing an avalanche. There have been several close calls in Valdez due to this. Permitting multiple operators in the same area increases the risk of a catastrophic mid-air accident between helicopters from different operators.[23]

Overcast further avers that

> [r]ather than factor in one other operator that flies on rare occasions with a single helicopter – Silverton – Triumvirate's heli-ski guides and pilots now are faced with the wild card factor of a third operator [ASG] who plans to fly several helicopters in the Neacola and Tordrillo Mountains, creating risks, hazards, and challenges that Triumvirate did not face before the BLM issued the decision.[24]

Finally, Overcast avers that

> [i]n my professional opinion, it is not safe to operate in close proximity to other operators, helicopters, or guided groups. The BLM decision to authorize [ASG] to fly and ski the same terrain as Triumvirate increases the risks of loss of life and catastrophic accidents. Triumvirate is immediately harmed today because the BLM is forcing Triumvirate to lower its safety standards to use

---

[23]Overcast Declaration at 6-7, ¶ 19, Docket No. 36.

[24]Id. at 13, ¶ 38b.

the same terrain during the 2018 operating season, and presumably future operating seasons.[25]

Defendants argue that plaintiff's concerns about human health and safety are not concrete because plaintiff has not provided any factual support for its allegations that there will be an increase in accidents or avalanches because of the January 28, 2018 decision. Defendants argues that all plaintiff has done is posit that such events might occur, which is not sufficient. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 403 (2013) (citation omitted) ("threatened injury must be <u>certainly</u> <u>impending</u> to constitute injury in fact, and . . . allegations of <u>possible</u> future injury are not sufficient"). Defendants acknowledge that Overcast has averred that "the BLM has issued multiple helicopter skiing permits for the same terrain in the Haines area of Alaska" and there have been three deaths in the Haines area in connection with heli-skiing.[26] But, defendants contend that two of these deaths occurred on State-managed lands, not BLM-managed lands, and while one death did occur on BLM-managed land, the individual's heli-skiing tour group was trespassing on BLM-managed land when the death occurred.[27] Defendants insist that plaintiff has simply not come forward with any evidence that establishes that an increase in avalanches and accidents

---

[25]Id. at 15, ¶ 41.

[26]Id. at 6, ¶ 18.

[27]Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) at 4, Docket No. 15.

is "certainly impending" in the 428,000-acre area in which the heli-skiing guides can operate in the Tordrillo and Neacola Mountains.

"'[T]he injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions.'" Krottner v. Starbucks Corp., 628 F.3d 1139, 1143 (9th Cir. 2010) (quoting Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 634 (7th Cir. 2007)). In Krottner, the plaintiffs alleged an "increased risk of future identity theft" because a laptop that contained personal employee information had been stolen due to Starbucks' negligence. Id. at 1142. The Ninth Circuit found these allegations sufficient, explaining that

> Plaintiffs–Appellants have alleged a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data. Were Plaintiffs–Appellants' allegations more conjectural or hypothetical—for example, if no laptop had been stolen, and Plaintiffs had sued based on the risk that it would be stolen at some point in the future—we would find the threat far less credible.

Id. at 1143. Here, too, plaintiff has alleged a credible and immediate harm stemming from the increase of the number of helicopters which are permitted to operate during the 2018 season. Plaintiff is not required to provide statistical evidence as to how much the safety risk has increased as long as the increased risk is nontrivial. See Covington v. Jefferson County, 358 F.3d 626, 638 n.15 (9th Cir. 2004) (quoting Walters v. Edgar, 163 F.3d 430, 434 (7th Cir. 1998) ("'[a] probabilistic harm, if nontrivial, can support standing'"). Overcast's

declaration plainly shows that the increased safety risks are nontrivial and that the January 28, 2018 decision creates a credible threat of harm to human health and safety. In addition, it is worth noting that the BLM amended plaintiff's permit after the BLM issued the permit to ASG. In February 2018, the BLM amended plaintiff's permit to include the following condition:

> Triumvirate, LLC must communicate regularly throughout the season with the other two BLM-permitted operators in the area regarding their flight plans. This will help to improve client experience, maintain safety, and reduce the likelihood of mid-air collisions.
>     a.    Other operators permitted by the BLM are: Silverton Mountain Guides and Alaska Snowboard Guides.[28]

The fact that the BLM amended plaintiff's permit to address safety concerns is evidence that the increased safety risks associated with the issuance of the ASG permit are concrete and particularized and not merely hypothetical or speculative.

Finally, plaintiff alleges a procedural injury.[29] Overcast avers that

> the BLM never gave Triumvirate notice that it was considering the [ASG] permit. . . . This failure to notify the primary and obvious stakeholder means that the BLM did not provide Triumvirate with any meaningful opportunity to comment about safety hazards and other consequences of the [ASG] permit before the agency made the decision to issue the permit.[30]

---

[28]Exhibit 14 at 5, Complaint for Judicial Review of Agency Action, Docket No. 1.

[29]Complaint for Judicial Review of Agency Action at 29, ¶ 112, Docket No. 1.

[30]Overcast Declaration at 14, ¶ 38h, Docket No. 36.

Defendants argue that plaintiff cannot rely on a procedural interest to establish standing because it has no other concrete interest that has been harmed as a result of defendants' conduct. See Summers, 555 U.S. at 496 ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing"); see also, Wilderness Soc., Inc. v. Rey, 622 F.3d 1251, 1260 (9th Cir. 2010) (a "procedural injury, standing on its own, cannot serve as an injury-in-fact. A concrete and particular project must be connected to the procedural loss").

As discussed above, however, plaintiff has adequately shown an injury to its interest in human health and safety. Therefore, plaintiff's procedural injury can serve as an injury in fact for constitutional standing purposes.

At this stage of the proceedings, plaintiff has made an adequate showing of an injury in fact to its interest in human health and safety and to its procedural interest. These injuries were caused by defendants' actions and can be addressed by the remedy that plaintiff seeks. Thus, plaintiff has constitutional standing to bring its claims.

But even if plaintiff has constitutional standing, which it does, defendants argue that its NEPA claims should still be dismissed because plaintiff lacks prudential standing.[31] "A prudential standing challenge is properly analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because if the relevant statute or constitutional provision does not entitle

---

[31]Defendants do not argue that plaintiff lacks prudential standing to bring its FLPMA claims or its stand-alone APA claim.

the party to judicial relief, then that party has failed to state a claim upon which relief can be granted." Battle Mountain Band of Te–Moak Tribe of W. Shoshone Indians v. U.S. Bureau of Land Mgmt., — F. Supp. 3d —, 2018 WL 1477628, at *3 (D. Nev. 2018). "'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

"'Because NEPA does not provide for a private right of action, plaintiffs challenging an agency action based on NEPA must do so under the'" APA. Nuclear Information and Resource Service v. Nuclear Regulatory Com'n., 457 F.3d 941, 950 (9th Cir. 2006) (quoting Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 937 (9th Cir. 2005)). "To meet the statutory requirements for standing under the APA, a plaintiff 'must establish (1) that there has been a final agency action adversely affecting [it], and (2) that, as a result, it suffers legal wrong or that its injury falls within the "zone of interests" of the statutory provision the plaintiff claims was violated.'" Id. (quoting Churchill County v. Babbitt, 150 F.3d 1072, 1078 (9th Cir. 1998) (quoting Lujan, 497 U.S. at 882–83)). "It is well settled that the zone of interests protected by NEPA is environmental." Id. "'If a harm does not have a sufficiently close connection to the physical environment, NEPA does not apply.'" Ranchers

Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric., 415 F.3d 1078, 1103 (9th Cir. 2005) (quoting Metro. Edison Co. v. People Against Nuclear Energy, 460 U.S. 766, 778 (1983)).

"Article III standing and the NEPA zone of interests test must be satisfied by the same injury." Yount v. Salazar, Case Nos. CV11–8171 PCT–DGC, CV12–8038 PCT DGC, CV12–8042 PCT DGC, CV12–8075 PCT DGC, 2014 WL 4904423, at *6 (D. Ariz. Sept. 30, 2014). Thus, the court first considers whether plaintiff's interest in human health and safety falls within NEPA's zone of interests.

Defendants argue that plaintiff's interest in human health and safety falls outside NEPA's zone of interests because it is not tied to the environment. Plaintiff however points out that NEPA's policy statement specifically refers to human health and safety:

> In order to carry out the policy set forth in this chapter, it is the continuing responsibility of the Federal Government to use all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may--
>
> * * *
>
> (2)  assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings; [and]
>
> (3)  attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences[.]

42 U.S.C. § 4331(b)(2), (3). Based on these specific policy concerns, plaintiff argues that there can be no doubt that NEPA protects interests of human health and safety.

"While it is true that NEPA contains references to human health in its statement of policy, see 42 U.S.C. § 4321, as the Supreme Court has explained, those references are to the statute's goals, not its means." Ranchers Cattlemen, 415 F.3d at 1103. Specifically, the Supreme Court stated that "although NEPA states its goals in sweeping terms of human health and welfare, these goals are ends that Congress has chosen to pursue by means of protecting the physical environment." Metro. Edison Co., 460 U.S. at 773. In order for a human health and safety interest to fall within NEPA's zone of interests, there must be some relationship between human health and safety and the physical environment. Here, plaintiff has failed to show any relationship between the increased risk to human health and safety and the physical environment. Without some relationship between the increased risk to human health and safety and the environment, plaintiff's interest in human health and safety does not fall with NEPA's zone of interests.

As discussed above, plaintiff's constitutional standing is also based on the alleged injury to plaintiff's procedural rights. But, plaintiff cannot rely on its procedural interest to show prudential standing without having some kind of environmental interest. See Yount, 2013 WL 93372, at *25 ("the Court rejects Quaterra's attempt to come under NEPA's zone of interests on the basis of alleged procedural violations absent a showing of an underlying environmental interest that the procedures were intended to protect").

What is missing here is a sufficiently close connection between plaintiff's human health and safety and procedural interests and the physical environment. Thus, plaintiff does not have prudential standing to pursue its NEPA claims, and these claims are dismissed with prejudice. Given the nature of plaintiff's permitted activity and the human health and safety basis for plaintiff's NEPA claims, the court concludes that any attempt at amendment of plaintiff's complaint would be futile.

Finally, defendants argue that plaintiff's stand-alone APA claim in Count VIII should be dismissed pursuant to Rule 12(b)(6) because it is duplicative of its NEPA and FLPMA claims. "It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." M.M. v. Lafayette School Dist., 681 F.3d 1082, 1091 (9th Cir. 2012). "[T]he APA relates to the court's authority and standard of review of agency actions, and does not give rise to a cause of action absent some other statutory or regulatory duty[.]" Oregon Natural Resources Council Action v. U.S. Forest Service, 445 F. Supp. 2d 1211, 1223 n.3 (D. Or. 2006) (citing Or. Natural Res. Council v. Thomas, 92 F.3d 792, 798-99 (9th Cir. 1996)). Plaintiff's stand-alone APA claim is duplicative, and it is dismissed with prejudice.

Conclusion

Defendant's motion to dismiss is granted in part and denied in part. It is denied as to the issue of constitutional standing. Plaintiff has constitutional standing to bring its claims. It is granted as to the issue of whether plaintiff has prudential standing to bring its NEPA

claims. Plaintiff's NEPA claims are dismissed with prejudice for lack of prudential standing. The motion to dismiss is also granted as to plaintiff's stand-alone APA claim in Count VIII. This claim is also dismissed with prejudice.

With the dismissal of plaintiff's NEPA claims and stand-alone APA claim, the only remaining claims in this matter are plaintiff's FLPMA claims. The court is ready to take up plaintiff's motion for a preliminary injunction as it pertains to the FLPMA claims. The court does not need to take "oral testimony at a preliminary injunction hearing . . . if the parties have a full opportunity to submit written testimony and to argue the matter." <u>Kenneally v. Lungren</u>, 967 F.2d 329, 335 (9th Cir. 1992). Counsel for plaintiff shall confer with defense counsel as to a date and time for oral argument on the motion for preliminary injunction and provide the court with two alternatives by May 8, 2018.

DATED at Anchorage, Alaska, this 1st day of May, 2018.

<u>/s/ H. Russel Holland</u>
United States District Judge