LEWIS, BESS, WILLIAMS & WEESE, P.C.
Ezekiel J. Williams
Carlos R. Romo
John H. Bernetich
1801 California St., Suite 3400
Denver, CO 80202
p: 303-228-2529
f: 303-861-4017
zwilliams@lewisbess.com
cromo@lewisbess.com
jbernetich@lewisbess.com

*Attorneys for Plaintiff Triumvirate, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TRIUMVIRATE, LLC, ) <br> d/b/a TORDRILLO MOUNTAIN ) <br> LODGE, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RYAN ZINKE, et al, ) <br> ) <br>     Defendants. ) <br> _____) | Case No. 3:18-CV-0091-HRH |

---

**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**
---

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff Triumvirate, LLC

("Triumvirate") files this Motion for Leave to File an Amended Complaint to add Michael

Overcast and Steven Hall as Plaintiffs because they have constitutional and prudential standing

to seek judicial review of the Defendants' NEPA violations under the principles identified by the

Court. See Docket No. 43 (dismissing Triumvirate's NEPA claims for lack of standing). The

Proposed First Amended Complaint does not allege any claims that did not appear in the initial Complaint.  Plaintiffs' Proposed First Amended Complaint, accompanied by Declarations from Mr. Overcast and Mr. Hall, is attached as Exhibit A.  A redline document comparing the initial Complaint (Docket No. 1) with the Proposed First Amended Complaint is attached as Exhibit B.  This is Plaintiff's first request for leave to amend its Complaint.

Defendants oppose this Motion.  Plaintiff respectfully requests oral argument on this Motion.

## INTRODUCTION

This litigation concerns a January 29, 2018 decision by the Defendant Bureau of Land Management ("BLM") to issue a special recreation permit to Alaska Snowboard Guides ("ASG") for helicopter skiing (the "BLM Decision") that threatens safety, existing recreation by Mr. Overcast and Mr. Hall, and the environment, that was issued with no public notice or opportunity for comment, and that violates the BLM's obligations under the National Environmental Policy Act ("NEPA"), Federal Land Policy and Management Act ("FLPMA"), and binding agency regulations.  Triumvirate filed its Complaint on March 5, 2018.  In its Complaint, Triumvirate asserted that Defendants violated NEPA by (1) failing to prepare a NEPA document, (2) failing to consider the adverse impacts of the action on the safety conditions under which people recreate, (3) failing to consider environmental effects, (4) failing to consider reasonable alternatives, and (5) failing to solicit public involvement or notify interested parties.  Triumvirate alleged that Defendants violated FLPMA by (6) failing to conform to the Ring of Fire Resource Management Plan and (7) failing to consider safety, user conflicts, and effects on existing recreation.  Triumvirate also alleged that (8) Defendants

violated the Administrative Procedure Act ("APA") by arbitrarily and capriciously issuing a special recreation permit to ASG.[1]  Docket No. 1.

On March 12, 2018, Defendants moved to dismiss Triumvirate's NEPA claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), contending that Triumvirate lacks Article III standing and prudential standing to assert them.  Docket No. 13.  Triumvirate opposed Defendants' motion and contended that BLM's decision harmed Triumvirate's health and safety, recreational, economic, and procedural interests, that those harms were each a cognizable injury in fact, and that each of those interests is within the zone of interests protected by NEPA.  Docket No. 20.

On May 1, 2018, this Court granted Defendants' motion in part, denied it in part, and dismissed Triumvirate's NEPA and APA claims.  Docket No. 43.  As to Article III standing, the Court held that Triumvirate, as a commercial entity, could not hold aesthetic or recreational interests and could not support its standing based on the interests of its employees.  Docket No. 43 at 9.  The Court acknowledged that Triumvirate's staff may have such interests.  Docket No. 43 at 9.  The Court held that Triumvirate had alleged an injury in fact by alleging harms to its interests in health and safety, as well as to its procedural interests granted by NEPA.  Docket No. 43 at 12-14.  As to prudential standing, the Court held that Triumvirate's health and safety and procedural interests were not connected to the physical environment, and therefore not within NEPA's zone of interests.  Docket No. 43 at 17-18.  The Court concluded that Triumvirate lacked prudential standing to assert its NEPA claims.

---

[1] The Court dismissed Triumvirate's stand-alone APA claim.  Docket No. 43 at 18.  Proposed plaintiffs Mr. Overcast and Mr. Hall do not seek to re-assert that claim, and it does not appear in the Proposed First Amended Complaint.

## RELIEF REQUESTED

Triumvirate respectfully requests leave to amend its Complaint to add Michael Overcast and Steven Hall as plaintiff parties. The accompanying Declarations of Mr. Overcast and Mr. Hall demonstrate that they have standing to assert the NEPA claims raised in the Complaint under the principles identified by the Court. See Exhibit A (Exhibits 15 and 16). Mr. Overcast and Mr. Hall heli-ski in the area in which the BLM authorized ASG to conduct heli-skiing activities, encountered ASG there this season, and plan to fly and ski there in 2019. The BLM's decision to issue a permit to ASG increases the risk of harm to Mr. Overcast and Mr. Hall when they recreate on those lands, negatively impacts their recreational interests in using and enjoying under safe conditions the physical environment of the Tordrillo and Neacola Mountains, affects their aesthetic enjoyment of this physical environment where and when they heli-ski, and harms their procedural interests afforded by NEPA. Both Mr. Overcast and Mr. Hall have constitutional and prudential standing to assert the claims in the proposed First Amended Complaint, including the NEPA claims dismissed by the Court.[2]

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides, with exceptions not relevant here, "a party may amend its pleading with the opposing party's written consent or the court's leave." "The court should freely give leave when justice so requires." Id. This Rule should be interpreted with "extreme liberality." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990). "In exercising its discretion 'a court must be guided by the underlying purpose of Rule

---

[2] Exhibits 1 to 14 of the Proposed First Amended Complaint are identical to Exhibits 1 to 14 of the Complaint (Docket. No. 1), and do not accompany the Proposed First Amended Complaint attached to this Motion. Plaintiffs submit two additional Exhibits: Declaration of Michael Overcast (attached as Exhibit 15) and Declaration of Steven Hall (attached as Exhibit 16).

15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (quoting United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)).

Courts should grant leave to amend unless the party opposing amendment can show that one of five factors favors denial of leave. Those factors are: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether plaintiff has previously amended its complaint. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990); see also Foman v. Davis, 371 U.S. 178, 182 (1962). Of these factors, "consideration of prejudice to the opposing party . . . carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. Thus a motion to amend "is to be liberally granted where from the underlying facts or circumstances, the plaintiff *may* be able to state a claim." DCD Programs, Ltd., 833 F.2d at 186 (quoting McCartin v. Norton, 674 F.2d 1317, 1321 (9th Cir. 1982) (emphasis added)).

## ARGUMENT

The Court should grant Triumvirate leave to amend its Complaint to add plaintiffs with standing to allege the NEPA claims dismissed by the Court. This is Triumvirate's first request to amend its Complaint. The requested amendment would not prejudice Defendants, would not be futile, is not motivated by bad faith, and does not follow undue delay.

I. Triumvirate's Requested Amendment Would Not Prejudice Defendants.

The party opposing amendment bears the burden of showing prejudice. DCD Programs, Ltd., 833 F.2d at 186. Defendants cannot carry this burden. Triumvirate filed its Complaint just over two months ago. The case remains at an early stage. A schedule for resolution of the

merits does not yet exist.  Defendants have not yet filed the administrative record.  Defendants have not yet answered the Complaint.  See id. at 187–88 ("Given that this case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled, there is no evidence that [defendant] would be prejudiced by the timing of the proposed amendment.").  Granting Triumvirate's request to add two individual plaintiffs would not enlarge the scope of the administrative record.

Defendants cannot show prejudice if the Court accepts the Amended Complaint, thereby allowing Mr. Overcast and Mr. Hall to participate in this action, because they could file a separate lawsuit against Defendants in this District to challenge the same BLM Decision.  No prejudice to BLM results if the Court accepts the Amended Complaint, thereby avoiding the filing of another lawsuit about the same agency decision.

Other situations where courts have found that an opposing party would be prejudiced by an amended complaint are not present here.  See Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (amendment requiring reopening of discovery would prejudice defendant); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1399 (9th Cir. 1986) (same); United States v. City of Twin Falls, 806 F.2d 862, 876 (9th Cir. 1986) (amendment not appropriate where request was made six weeks after jury trial had begun).

Granting leave to amend is particularly appropriate to permit a plaintiff to cure standing deficiencies.  See Sierra Club v. Morton, 405 U.S. 727, 735 n.8 (1972) (affirming dismissal of case based on lack of standing and noting that plaintiff was free to seek leave to amend its complaint to establish standing); Sierra Club v. Morton, 348 F. Supp. 219, 220 (N.D. Cal. 1972) (following the Supreme Court's decision in Sierra Club v. Morton, granting leave to amend complaint to add additional parties and claims); Mullaney v. Anderson, 342 U.S. 415, 417 (1952)

(granting motion by plaintiff to add two parties to cure alleged standing deficiency); Smith v. Pacific Properties & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004) (holding that district court abused its discretion by denying plaintiff leave to amend its complaint to include additional facts in support of standing); see also Northstar Fin. Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1048 (9th Cir. 2015) (affirming district court order permitting plaintiff to file supplemental pleading under Rule 15(d) to cure standing deficiency); Northstar Fin. Advisors, Inc. v. Schwab Investments, 781 F. Supp. 2d 926, 933 (N.D. Cal. 2011) (collecting cases from other circuits permitting plaintiffs to file supplemental pleadings to cure standing deficiencies).

Courts within the Ninth Circuit routinely grant a plaintiff's motion to amend its complaint to add plaintiffs. E.g., Pablo v. Servicemaster Global Holdings, Inc., No. C 08-03894-SI, 2009 WL 1764541 (N.D. Cal. June 22, 2009); Doe v. Boy Scouts of Am., No. 1:13-cv-275-BLW, 2014 WL 345641 (D. Idaho Jan. 30, 2014); RRW Legacy Mgmt. Grp. v. Walker, No. C14-326 MJP, 2014 WL 4925491 (W.D. Wash. Sep. 30, 2014); see also Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). Triumvirate's requested amendment would not prejudice Defendants.

II.     Triumvirate's Requested Amendment Would Not Be Futile.

Ninth Circuit precedent "requires that if, after reviewing the record, this court finds a *colorable federal claim* in [the proposed amended] complaint, it must reverse the district court's denial of leave to amend." DCD Programs, Ltd., 833 F.2d at 188 (emphasis added). Where a plaintiff seeks to amend a complaint following dismissal of certain claims for failure to state a claim, a court should permit amendment "unless it appears beyond doubt" that the proposed amended complaint would also be dismissed for failure to state a claim. Id. The Ninth Circuit

has instructed district courts to grant leave to amend where the requested amendment is a good-faith effort to cure pleading deficiencies and the proposed amendment would not be futile. See Eminence Capital, LLC, 316 F.3d at 1053 (reversing district court's denial of leave to amend where "plaintiffs' allegations were not frivolous, plaintiffs were endeavoring in good faith to meet the heightened pleading requirements and to comply with court guidance, and, most importantly, it appears that plaintiffs had a reasonable chance of successfully stating a claim if given another opportunity").

Here, Triumvirate is acting in good faith to cure the NEPA standing deficiencies the Court identified in the order dismissing Triumvirate's NEPA claims. Triumvirate's proposed amendment would not be futile. Mr. Overcast and Mr. Hall have Article III and prudential standing to seek judicial review of the Defendants' NEPA compliance because they fly and ski in the area where the BLM authorized ASG to fly and ski, were adversely affected by ASG's presence there in 2018, and plan to fly and ski in the same area in 2019.

> A. Mr. Overcast and Mr. Hall have Article III standing to challenge the BLM's NEPA violations.

To establish Article III standing: (1) a plaintiff must have suffered an injury in fact; (2) the injury must be fairly traceable to the challenged action; and (3) it must be likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Docket No. 43 at 6. Mr. Overcast and Mr. Hall use and enjoy the area in which ASG conducts heli-skiing activities by flying and skiing there. Their declarations allege that the BLM Decision to issue a permit to ASG (1) increases the risk of harm to Mr. Overcast and Mr. Hall by increasing the risk of avalanches and other accidents, thereby amplifying the risks posed by the physical environment of the Tordrillo and Neacola Mountains, (2) negatively impacts their recreational interests in using and enjoying the physical environment and aesthetic qualities

of the Neacola and Tordrillo Mountains, and (3) harms their procedural interests afforded by NEPA.  Each of these interests is a cognizable injury in fact.

*Recreational and aesthetic interests*.  The BLM Decision injures Mr. Overcast's and Mr. Hall's recreational and aesthetic interests in using and enjoying the affected physical environment.  Overcast Decl. ¶ 37(a)-(j); Hall Decl. ¶ 26(a)-(f).  Mr. Overcast and Mr. Hall fly and ski in the area in which the BLM authorized ASG to heli-ski.  Each flew and skied there in 2018 and plans to fly and ski there in 2019.  Overcast Decl. ¶ 40; Hall Decl. ¶ 28.  Their past and planned future use of the area for recreation and aesthetic appreciation gives them a constitutionally sufficient injury in fact to seek judicial review of the BLM Decision.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 183 (2000) (harm to plaintiff's recreational interests is injury-in-fact if plaintiff alleges that he "use[s] the affected area" and that "the aesthetic and recreational values of the area will be lessened by the challenged activity"); White Tank Concerned Citizens, Inc. v. Strock, 563 F.3d 1033, 1039 (9th Cir. 2009) (harm to recreational interests is injury in fact).  Each has devoted much of his life to wilderness recreation including, most recently, in the Tordrillo and Neacola Mountains in the area covered by the ASG permit.  Overcast Decl. ¶ 5; Hall Decl. ¶¶ 2-3, 15-16.

Each has heli-skied numerous times in the area in the past and plans to fly and ski in the area covered by the ASG permit in the future.  Overcast Decl. ¶¶ 5, 40; Hall Decl. ¶¶ 6, 20.  Each is passionate about recreating in the undeveloped and remote physical environment of the Tordrillo and Neacola Mountains.  Overcast Decl. ¶ 6; Hall Decl. ¶¶ 4-5.  The BLM Decision has impacted their concrete recreational interests.  On two instances since ASG began operations this season, Mr. Overcast had to leave an area he had planned to ski because ASG was using it, and ASG's presence made it unsafe for him to fly and ski there.  See Overcast Decl. ¶ 37(e)-(f).  On

two other instances, Mr. Hall had to avoid terrain that he had planned to ski because ASG was using it. Hall Decl. ¶¶ 25, 26(e). The impacts of the BLM Decision to Mr. Overcast's and Mr. Hall's recreation interests are injuries in fact. See WildEarth Guardians v. U.S. Dept. of Agric., 795 F.3d 1148, 1154 (9th Cir. 2015) ("reduced recreational and aesthetic enjoyment" of the affected area is injury in fact).

*Health and safety interests.* For the reasons the Court stated in its May 1, 2018 Order, the BLM Decision increased the risk of harm to Triumvirate and caused a concrete and particularized injury in fact. Docket No. 43 at 12-13. Likewise, the BLM Decision injures Mr. Overcast and Mr. Hall by increasing the risk that one or both will be injured or killed by an avalanche or helicopter collision while recreating in the Tordrillo or Neacola Mountains.

The BLM Decision injures the interests of Mr. Overcast and Mr. Hall in heli-skiing under conditions that minimize safety risks and hazards. Overcast Decl. ¶¶ 37(a)-(h), 41; Hall Decl. ¶ 26(a)-(f). Both Mr. Overcast and Mr. Hall have already encountered ASG's helicopter in the same area where they had planned to ski. Overcast Decl. ¶ 37(e); Hall Decl. ¶¶ 25, 26(e). Mr. Overcast was not aware that ASG would be in that area at that time until he was close enough to see ski tracks. Mr. Overcast could not see ASG's helicopter among the peaks and rugged terrain. After accessing the common radio frequency, Mr. Overcast confirmed that ASG was in the same valley where he was but was still unable to spot ASG's helicopter. Overcast Decl. ¶ 37(e)-(f).

The risk of a helicopter collision or avalanche occurring because of the BLM Decision is concrete and real. This injury satisfies Article III's case-or-controversy requirement. Krottner v. Starbucks Corp., 628 F.3d 1139, 1143 (9th Cir. 2010); Docket No. 43 at 12.

*Procedural interests.* The BLM Decision harms Mr. Overcast's and Mr. Hall's procedural interests in the BLM's disclosing through the NEPA process the reasonably

foreseeable impacts of the issuance of the ASG permit, including the adverse consequences to their recreational, aesthetic, safety and environmental interests as heli-skiers that use the same terrain. See Docket No. 43 at 14-15 (holding that harm to Triumvirate's procedural interests is injury in fact).

The fact that Mr. Overcast and Mr. Hall are employees of Triumvirate does not deprive them of their ability to assert their individual interests in ensuring that the BLM adequately considers the effects of its decision to grant the ASG permit in accordance with NEPA as this Court acknowledged. Docket No. 43 at 9; Am. Independence Mines & Minerals Co. v. U.S. Dep't of Agric., 733 F. Supp. 2d 1241, 1252 (D. Idaho 2010) (noting that owners of a mining company, suing in their individual capacities, may have aesthetic interests within NEPA's zone of interests); United States v. W. Radio Servs., Co, 869 F. Supp. 2d 1282, 1286 n.2 (D. Or. 2012) (employees may have aesthetic and recreational interests in their individual capacities). Mr. Overcast and Mr. Hall hold interests separate from and independent of their relationship to Triumvirate. As individuals and citizens, they have standing to challenge the BLM Decision not to prepare a NEPA document about the consequences on existing heli-skiers of the agency's authorizing another operator to fly and ski in the same terrain. They assert these interests as individuals, rather than for Triumvirate.

B. Mr. Overcast and Mr. Hall have prudential standing to challenge the BLM's NEPA violations.

In additional to constitutional standing, a plaintiff proceeding under the APA must assert an interest "*arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Nev. Land Action Ass'n v. U.S. Forest Serv., 8 F.3d 713, 716 (9th Cir. 1993) (quoting Ass'n of Data Processing Serv. Org., Inc. v. Camp, 397 U.S. 150, 153 (1970) (emphasis added)). The purpose of the zone-of-interests "test is 'to exclude those

plaintiffs whose suits are more likely to frustrate than to further statutory objectives.'" Nev. Land Action Ass'n, 8 F.3d at 716 (quoting Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 397 n.12 (1987)).

Mr. Overcast's and Mr. Hall's interests in enjoying and recreating in the physical environment of the Tordrillo and Neacola Mountains under safe conditions, as well as their procedural interests in ensuring that BLM, before making a decision, disclose how the ASG permit will affect their existing and planned recreation and aesthetic use of the same lands, are within NEPA's zone of interests. It cannot be said that these interests are "more likely to frustrate rather than to further statutory objectives." Id.

*Recreational and aesthetic interests.* The Court acknowledged that Triumvirate's "employees or customers" may possess "aesthetic or recreational interests." Docket No. 43 at 9 (quoting United States v. W. Radio Servs. Co., 869 F. Supp. 2d 1282, 1286 n.2 (D. Or. 2012)). Because the Court held that Triumvirate, as a commercial entity, could not assert the recreational interests of its staff and guests, the Court did not address whether such interests are within NEPA's zone of interests. Docket No. 43 at 9.

Recreational interests such as those held by Mr. Overcast and Mr. Hall are without question within NEPA's zone of interests. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 886 (1990) ("We have no doubt that 'recreational use and aesthetic enjoyment'" are within the zone of interests that "both FLPMA and NEPA" "were specifically designed to protect."); Ocean Advocates v. U.S. Army Corps of Engineers, 402 F.3d 846, 861 (9th Cir. 2005) (harm to recreational interests "clearly meet the lenient zone of interests test" for NEPA). Mr. Overcast and Mr. Hall each spend a significant amount of time skiing in the Tordrillo and Neacola Mountains and enjoying the area's physical environment and plan to continue to do so in the

*Triumvirate, LLC v. Zinke*, No. 3:18-cv-00091-HRH    12
Case 3:18-cv-00091-HRH   Document 46   Filed 05/09/18   Page 12 of 18

future. Overcast Decl. ¶¶ 5-6; Hall Decl. ¶¶ 5-6, 26(f), 28. The physical environment—the area's ruggedly beautiful aesthetic qualities and prime recreational opportunities—is what attracts Mr. Overcast and Mr. Hall to the area for heli-skiing.

The fact that Mr. Overcast and Mr. Hall conduct these activities as part of their work with Triumvirate is of no moment. They are affected by the BLM Decision as individuals because they fly and ski in the area in which the BLM authorized ASG to fly and ski. The test is concerned only with whether the particular interest asserted is within NEPA's zone of interests, and whether the challenged action harms that interest. Mr. Overcast and Mr. Hall have individual interests within the zone of interests of NEPA, and the BLM Decision harms those interests.

> [R]equiring simply that a litigant "have" an interest in enforcing the relevant statute amounts to hardly any test at all. That is why our decisions have required instead that a party "establish that the *injury he complains* of . . . falls within the 'zone of interests' sought to be protected by the statutory provision" in question. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990); see Bennett v. Spear, 520 U.S. 154, 176 (1997) . . . ; see also Nat'l Wildlife Fed'n, 497 U.S. at 885–86 (noting that asserted injury is to the plaintiffs' interests in "recreational use and aesthetic enjoyment," and finding those particular interests "are among the *sorts* of interests [the] statutes were specifically designed to protect").

Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co., 522 U.S. 479, 507-08 (1998) (emphases in original). Because the recreational and aesthetic interests asserted by Mr. Overcast and Mr. Hall are among the *sorts* of interest protected by NEPA, the proposed plaintiffs have prudential standing. See Ray Charles Found. v. Robinson, 795 F.3d 1109, 1123 (9th Cir. 2015) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1393 (2014).

*Health and safety interests*. The BLM Decision permitting another operator to conduct heli-skiing activities in the same area harms Mr. Overcast's and Mr. Hall's ability to safely enjoy

the physical environment in which they fly and ski. Mr. Overcast's and Mr. Hall's interests in health and safety are inextricably intertwined with the physical environment in which they recreate. See Ranchers Cattlemen Action Legal Fund v. U.S. Dep't of Agric., 415 F.3d 1078, 1103-04 (9th Cir. 2005) (injury to human health and safety interests that bear a "sufficiently close connection to the physical environment" are within NEPA's zone of interests (quoting Metro. Edison Co. v. People Against Nuclear Energy, 460 U.S. 766, 778 (1983)). By permitting a third operator in the same area where Mr. Overcast and Mr. Hall ski and fly, the BLM Decision increases the risks posed by the physical environment to them when they recreate among the peaks and snowfields. These interests are within NEPA's zone of interests.

The Court, citing Ranchers Cattlemen, held that Triumvirate lacked standing because its health and safety interests did not bear a sufficiently close connection to the physical environment. Docket No. 43 at 17-18. Mr. Overcast's and Mr. Hall's health and safety interests bear no resemblance to those at issue in Ranchers Cattlemen. In that case, the plaintiffs asserted—in a single sentence—that importation of contaminated beef would increase the risk of disease, thus harming plaintiffs' health and safety interests. 415 F.3d at 1103. The court held that this injury was "solely a matter of human health," "has no connection to the physical environment," and therefore fell outside NEPA's zone of interests. Id.

Mr. Overcast's and Mr. Hall's health and safety interests, by contrast, depend entirely on the physical environment. The physical environment of the Tordrillo and Neacola Mountains—specifically, the topography and climate—endow the area with excellent recreation opportunities and draw Mr. Overcast and Mr. Hall to recreate in that area. The same characteristics of the physical environment, however, exacerbates the risk of an avalanche or helicopter collision occurring when recreating in the area. The BLM Decision amplifies these risks further by

placing an additional operator in the same terrain at the same time as Mr. Overcast and Mr. Hall. These health and safety interests are inseparable from the physical environment because they are about the environmental conditions of avalanches, snow safety, and helicopter practices among mountains. Those interests differ starkly in kind and extent from the risks posed by importation of contaminated food at issue in Ranchers Cattlemen. These interests are protected by NEPA. 415 F.3d at 1103; see also Yount v. Salazar, No. CV11-8171-PCT DGC, 2013 WL 93372, at *23 (D. Ariz. Jan. 8, 2013) ("economic or social" impacts are within NEPA's zone of interests when "interrelated" with "natural or physical environmental effects") (quoting 40 C.F.R. § 1508.14)).

*Procedural interests.* For the same reasons, Mr. Overcast's and Mr. Hall's procedural interests bear a sufficiently close relationship to the physical environment and, therefore, fall within NEPA's zone of interests. Id. The BLM Decision harms Mr. Overcast's and Mr. Hall's procedural interests in ensuring disclosure through the NEPA process of the reasonably foreseeable impacts of the issuance of the ASG permit, including the adverse consequences to their recreational, aesthetic, safety and environmental interests as existing recreation users on the same terrain.

III.     The Requested Amendment Is Not Motivated By Bad Faith.

Triumvirate's requested amendment is not motivated by bad faith. Instead, the requested amendment is a good-faith attempt to "comply with court guidance" by curing the deficiencies identified by the Court. Eminence Capital, LLC, 316 F.3d at 1053; see also DCD Programs, Ltd., 833 F.2d at 187 ("Since there is no evidence in the record which would indicate a wrongful motive, there is no cause to uphold the denial of leave to amend on the basis of bad faith."); c.f. Sorosky v. Burroughs Corp., 826 F.2d 794, 805 (9th Cir. 1986) (finding bad faith where the plaintiff sought to destroy diversity jurisdiction by seeking to add a new defendant).

The BLM Decision poses significant unexamined and undisclosed harms to Triumvirate, its staff, and guests. The BLM chose to hide those harms to heli-skiers like Mr. Overcast and Mr. Hall by not preparing a public NEPA document in which it would be forced to publicly disclose them. The Court determined that Triumvirate, acting alone, does not have standing to challenge that decision. Triumvirate seeks to add two individual parties who do have standing to seek judicial review of the BLM's NEPA compliance under the test applied by the Court. This amendment is made in good faith.

IV. The Requested Amendment Does Not Follow Undue Delay.

Triumvirate has prosecuted this case with diligence since filing its Complaint on March 5, 2018—six days after the BLM first informed it that the ASG permit was in effect. Docket No. 20 at 42. This Court granted Defendants' motion to dismiss Triumvirate's NEPA and APA claims on May 1, 2018. Triumvirate now seeks, less than two weeks after the Court's order, to correct the deficiencies identified in that order. This request does not follow undue delay. See DCD Programs, Ltd., 833 F.2d at 187 (holding that passage of one year and five months between the filing of the initial complaint and plaintiff's request to add additional defendants was not undue delay, and reversing denial of leave to amend); Hurn v. Retirement Fund Tr. of Plumbing, Heating and Piping Indus., 648 F.2d 1252, 1254 (9th Cir. 1981) (passage of two years is not undue delay and reversing denial of motion for leave to amend).

## CONCLUSION

For the foregoing reasons, Triumvirate respectfully requests the Court grant Triumvirate leave to file the proposed First Amended Complaint that accompanies this Motion. Plaintiff respectfully requests oral argument on this Motion.

Dated this 9th day of May, 2018.

>Respectfully submitted,
>
>*s/ Ezekiel J. Williams*
>Ezekiel J. Williams
>Carlos R. Romo
>John H. Bernetich
>LEWIS, BESS, WILLIAMS & WEESE, P.C.
>1801 California St., Suite 3400
>Denver, CO 80202
>Telephone: 303-228-2529
>Facsimile: 303-861-4017
>zwilliams@lewisbess.com
>cromo@lewisbess.com
>jbernetich@lewisbess.com
>
>*Attorneys for Triumvirate, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to the following:

**Shawn Derek Shugert**
U.S. Dept of Justice Environment & Natural Resources Div
601 D Street N.W. Room 3036
Washington, DC 20004
202-305-0169
Fax: 202-305-0506
Email: shawn.shugert@usdoj.gov

**Tyler McVeigh Alexander**
U.S. Department of Justice Environmental & Natural Resources Div
601 D Street NW
Washington, DC 20044
202-305-0238
Fax: 202-305-0506
Email: tyler.alexander@usdoj.gov

*s/ Glenda Huebscher*